## BENJAMIN B. THORESON v. CIVIL SERVICE COMMISSION OF CITY OF ST. PAUL AND OTHERS.

242 N. W. 2d 603.

May 14, 1976—No. 45994.

*Robins, Davis & Lyons, Leo F. Feeney,* and *Bruce A. Finzen,* for appellant.

*Pierre Regnier,* City Attorney, and *Terry Sullivan,* Assistant City Attorney, for respondents.

Heard before Kelly, MacLaughlin, and Scott, JJ., and considered and decided by the court en banc.

MACLAUGHLIN, JUSTICE.

The principal issue on this appeal is whether the Civil Service Commission of the city of St. Paul properly upheld the discharge of appellant, Benjamin B. Thoreson, from his position with the St. Paul Department of Community Services. The district court determined that the findings of the commission were supported by the evidence and sustained the discharge. We affirm.

Thoreson was employed by the department of community services as a building inspector. His discharge grew out of his activities involving a house located at 308 East Jessamine in St.

Paul. In February 1974 the St. Paul Building Department, after consultation with St. Paul Housing and Redevelopment Authority (HRA), "posted" the house as unfit for human habitation and sent its then owner, a Mrs. Brockway, a letter which ordered her to vacate on or before May 7, 1974. Thereafter, in March 1974, Mrs. Brockway sold the house to Mr. and Mrs. Wayne Semple. There is evidence that the sale was made with the specific understanding that the house would be demolished. In June 1974, Mr. Semple was killed in an accident. Mrs. Semple, desiring to sell the property, contacted a realtor, George Blank. Subsequently, George Blank suggested to appellant that he purchase the home. Appellant checked the building department's file regarding the house and agreed to purchase the property. The file contained documents indicating the house was scheduled to be demolished, but appellant testified he could not recall seeing any such documents.

After purchasing the property, appellant applied for a permit to rehabilitate the house. In his application for the permit, appellant represented that George Blank was the owner of the property and that B & D Construction was the general contractor. Appellant signed George Blank's name to the application and secured a permit "subject to the Inspector's approval." In fact, appellant was the owner and intended to do the rehabilitation work himself. Further, the inspection by the building department of the rehabilitation work done on the house would, in the normal course of business, be assigned to appellant himself as it was located in appellant's building inspection district. Appellant testified, however, that it was his intention, when the time came, to have another inspector handle the assignment.

In July 1974 an employee of HRA notified appellant's supervisor in the building department that appellant was rehabilitating a house scheduled for demolition in an HRA program. Appellant, in explanation of his actions, said that George Blank had given him permission to use his name in securing the permit, and that he used the name B & D Construction to avoid criticism from

his colleagues in the building department concerning the fact that he was working a second job. On July 29, 1974, appellant was notified by the director of the department of community services that he was discharged from his position. On August 26, 1974, and September 3, 1974, appellant received a hearing before the St. Paul Civil Service Commission concerning the discharge.

The commission affirmed the discharge on the grounds that appellant was guilty of violating subsections (e), (i), and (s) of St. Paul Civil Service Rule 32B. Subsection (e) prohibits "conduct unbecoming an officer or employee of the City"; subsection (i) prohibits "an act which amounts to an act of insubordination, or to disgraceful conduct"; and subsection (s) prohibits the making of "any false statement," engaging in "any fraudulent conduct," or "attempting any deception in any official City business." The district court, upon review, upheld these findings and the resulting discharge.

■ St. Paul City Charter, § 12.03.3 provides that no permanent employee in the civil service shall be discharged "except for cause." [1] Section 32A 3 of the Civil Service Rules recognizes this requirement, and Section 32B defines conduct constituting cause. A similar charter requirement, "sufficient cause," was defined in State ex rel. Hart v. Common Council, 53 Minn. 238, 244, 55 N. W. 118, 120 (1893) as follows:

"* * * The cause must be one which specially relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public. The cause must be one touching the qualifications of the officer or his performance of its [sic] duties, showing that he is not a fit or proper person to hold the office. An attempt to remove an officer for any cause not affecting his competency or fitness would be an excess of power, and equivalent to an arbitrary removal. In the absence of any statu-

---

[1] Cf. Minn. St. 43.24, subd. 1.

tory specification *the sufficiency of the cause should be determined with reference to the character of the office, and the qualifications necessary to fill it."* (Italics supplied.)

The scope of review of a decision of a civil service commission upholding the discharge of an employee is very narrow. In State ex rel. Jenson v. Civil Service Comm. 268 Minn. 536, 538, 130 N. W. 2d 143, 145 (1964), certiorari denied, 380 U. S. 943, 85 S. Ct. 1023, 13 L. ed. 2d 962 (1965), we said:

"The discharge of a municipal employee who is protected against arbitrary dismissal by statute or an established civil service system is an administrative function. Judicial review of such proceedings by certiorari is *narrowly limited in scope.* Where proceedings before the administrative agency vested with final authority are instituted upon a notice which reasonably details the facts claimed to constitute misconduct so that the employee is given fair opportunity to prepare and defend; where the charges made are of a substantial nature directed at the malfeasance or nonfeasance of duties assigned to the employee and which specially relate to and affect the rights and interests of the public; and where the employee is afforded a fair hearing, *the findings upon which a discharge is based are to be accepted by the court unless they are unsupported by substantial evidence on the record considered as a whole. \* \* \* The strictures of this type of judicial review require that both the trial court and this court refrain from substituting their judgment concerning the inferences to be drawn from the evidence for that of the agency. Unless there is manifest injustice, this limitation applies even though it may appear that contrary inferences would be better supported or we would be inclined to reach a different result were we the triers of fact."* (Italics supplied.)

Thus, we need only decide whether there was substantial evidence in the record to support the conclusion that appellant was discharged for just cause. Appellant maintains that his activities were essentially harmless; that he made no particular effort to

conceal them; and that, indeed, some of his fellow employees and superiors had knowledge of what he was doing. He further asserts there was no conflict of interest because he had not proceeded far enough with his rehabilitation work to require an inspection and, in any event, he intended the inspection to be done by someone other than himself. On the other hand, he concedes he did secure a building permit in another person's name, which allowed him to rehabilitate a house located in his own inspection district.

We believe the activities of appellant constituted just cause for his discharge when considered with reference to the character of his office and the qualifications necessary to fill it. The position of building inspector is one of trust which requires a substantial degree of honesty and integrity. The fact that appellant deliberately made misrepresentations on the permit application could reasonably indicate to the commission that he lacked the requisite degree of honesty and integrity to properly perform his duties. Moreover, the fact that appellant was the building inspector in the district where the house was located, and the fact that the permit was subject to the approval of the building inspector, shows a willingness on the part of appellant to take advantage of, or at the very minimum to put himself in a position to take advantage of, his official capacity for his own personal benefit. The appearance of impropriety in such a situation is obvious.

In addition there was testimony in the record showing that the building department's file on the house at 308 East Jessamine contained documents disclosing that the house was scheduled for demolition. Appellant admits reviewing the file before purchasing the house. Thus, the commission could reasonably infer from this testimony that appellant had knowledge of the proposed demolition.

What weight to accord appellant's excuses and explanations for his behavior was solely for the commission to determine. From the evidence in the record, though, it could reasonably be

concluded that there was just cause for appellant's discharge and that the commission's decision to uphold the discharge was not arbitrary or unreasonable. Indeed, the commission's decision reflects a justified concern in enforcing high ethical standards for those in positions of public trust.

■ Appellant argues that the civil service commission should bear the cost of preparing the written transcript in this appeal. To support this proposition appellant relies upon the following language in Johnson v. Village of Cohasset, 263 Minn. 425, 433, 116 N. W. 2d 692, 698 (1962):

"Applying these doctrines here where defendant village seeks to terminate plaintiff's employment, it would seem clear that the burden rested upon it to be prepared to make an adequate record of the testimony presented at the hearing so that on appeal it could demonstrate that the evidence was adequate to support a finding as to plaintiff's incompetency or misconduct."

However, contrary to appellant's argument, the Johnson opinion did not hold that the administrative board must bear the cost of preparing a written transcript. The court used the language cited by appellant in the context of answering the following question (263 Minn. 430, 116 N. W. 2d 696):

"1.   Should there be a court reporter in attendance at all hearings held under the Veterans Preference Act? If so, at whose expense should the court reporter be paid?"

The court was concerned with the fact that no record of any kind was made of the hearing. It is evident from the court's conclusion that it was addressing only the question of who was responsible for providing a court reporter (at a discharge hearing) (263 Minn. 433, 116 N. W. 2d 698):

"* * * It would follow that in the present proceedings plaintiff was within his rights as guaranteed by § 197.46 in insisting that a stenographic report of the proceedings be made, and that the hearing should not proceed until the personnel and facilities were provided."

The court in Johnson never considered the question of who was financially responsible for providing a written transcript of the hearing to the appellate court.

An administrative body's responsibility for providing a stenographer to record official proceedings of a judicial nature is similar to a trial court's obligation to provide a court reporter. Absent special circumstances this responsibility does not extend to providing a free written transcript to any party who decides to appeal. The civil service commission fulfilled its responsibility in the instant case by bearing the expense of having a court reporter at the hearing. By deciding to appeal a decision, a party undertakes the responsibility of providing a written transcript of the proceedings to the appellate court. Rule 110.02, Rules of Civil Appellate Procedure, requires that each party bear the cost for the transcripts which it orders. See, also, Rule 139. Appellant presumably ordered the transcript for this appeal and accordingly should bear the cost for this transcript. Appellant has presented no reason which would justify an exception to this procedure in the instant case.

■ Appellant questions the constitutionality of the provisions of St. Paul Civil Service Rule 32B(e) which prohibits "conduct unbecoming an officer or employee of the City" and 32B(i) which prohibits "an act which amounts to an act of insubordination, or to disgraceful conduct." Appellant argues these subsections are so vague as to violate due process of law. It is not necessary, however, for us to reach these constitutional questions because appellant was also found to have violated 32B(s) which prohibits the making of "any false statement," engaging in "any fraudulent conduct," or "attempting any deception in any official City business." Appellant does not argue that this subsection is unconstitutionally vague and we hold that the facts of this case are sufficient to support appellant's discharge based upon that subsection alone.

Affirmed.