James N. KICHLER, Appellant,

v.

CIVIL SERVICE COMMISSION OF SAINT PAUL, Respondent.

No. CX–85–1515.

Court of Appeals of Minnesota.

Feb. 4, 1986.

Stanley J. Mosio, St. Paul, for appellant.

Edward P. Starr, City Atty., Paul F. McCloskey, Asst. City Atty., St. Paul, for respondent.

Heard, considered, and decided by SEDG-WICK, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Appellant James Kichler, a police officer with the City of St. Paul, was discharged from his job following allegations that he misused his office. The St. Paul Civil Service Commission upheld the discharge. The district court determined that the findings of the commission were adequately supported by the evidence and sustained the discharge. We affirm.

## FACTS

Appellant began work as a St. Paul police officer in 1975. In May 1983, two women acquaintances of his, Nancy Sletner and Betsy Davies, reported to the police department that in 1981 appellant had assisted Sletner in filing a false burglary report. They said Sletner filed an insurance claim using the falsified police report and split the claim proceeds with appellant.

The resulting police investigation of the burglary report and of appellant's and Slet-

ner's bank account records corroborated the women's report. Appellant was subsequently discharged as a police officer. In the interim, the two women contacted the police department again and recanted their allegations. Kichler appealed his discharge to the St. Paul Civil Service Commission. That body held a hearing and issued findings as follows:

1. The preponderance of evidence indicates that James N. Kichler was involved in an illegal act.
2. The burglary report was highly suspect due to omissions and false statements.
3. That the total effect, nuances, contradictions, coincidences, and story reversals lacked credibility.

The Commission's order upheld Kichler's discharge. The district court heard the case upon a writ of certiorari and affirmed the Commission. Kichler then brought this appeal, claiming there is no credible evidence to sustain the Commission's decision.

## ISSUE

Are the findings upon which appellant's discharge was based supported by substantial evidence?

## ANALYSIS

The scope of review of a decision of a civil service commission upholding the discharge of an employee is very narrow. *In re Setchell*, 261 N.W.2d 354, 355 (Minn. 1977), *cert. denied sub nom Setchell v. Sheriff's Civil Service Commission*, 436 U.S. 926, 98 S.Ct. 2821, 56 L.Ed.2d 769 (1978); *Thoreson v. Civil Service Commission of St. Paul*, 308 Minn. 357, 361, 242 N.W.2d 603, 605–06 (1976). In *Thoreson*, the Minnesota Supreme Court restated the rule:

"Where proceedings before the administrative agency vested with final authority are instituted upon a notice which reasonably details the facts claimed to constitute misconduct so that the employee is given fair opportunity to prepare and defend; where the charges made are of a substantial nature directed at the

malfeasance or nonfeasance of duties assigned to the employee and which specially relate to and affect the rights and interests of the public; and where the employee is afforded a fair hearing, the findings upon which a discharge is based are to be accepted by the court unless they are unsupported by substantial evidence on the record considered as a whole."

*Id.,* 308 Minn. at 361, 242 N.W.2d at 605–06 (quoting *State ex rel. Jenson v. Civil Service Comm.,* 268 Minn. 536, 538, 130 N.W.2d 143, 145 (1964) *cert denied,* 380 U.S. 943, 85 S.Ct. 1023, 13 L.Ed.2d 962 (1965)). Moreover, both the trial court and this court must refrain from substituting judgment concerning the inferences to be drawn from the evidence. *Id.* 242 N.W.2d at 606.

■ Appellant presents a two-pronged argument. First, he argues that Sletner's failure to testify at the civil service hearing violated his constitutional right of confrontation. An accused's constitutional right to confront the witnesses against him applies only in criminal prosecutions. U.S. Const. amend. VI; Minn. Const. art. 1, § 6. A civil service hearing is not a criminal prosecution. Thus, appellant's constitutional argument is not appropriate in this case.

■ Second, appellant contends that the Commission erred in its interpretation of evidence presented at the hearing. Because Sletner and Davies recanted their allegations against him, appellant asks this court to disregard their initial charges. We agree that the change in the women's stories raises a question regarding their credibility. But the police department's investigation revealed information about appellant's conduct that stands independently of both the women's initial charges and their later withdrawals.

The police investigators discovered that appellant had filed a burglary report in 1981 on Sletner's behalf. They also found that the report contained a number of irregularities indicating that it had been falsified. First, although the report was made while appellant was not on duty, the narrative portion of the report began with "Squad 135 was dispatched" to Sletner's house, indicating that appellant had been sent there by the police dispatcher. Moreover, when he was on duty, he was not assigned to Squad 135, but Squad 133. Second, he indicated in the report that he had dusted for fingerprints and found none. Appellant had never been issued a fingerprinting kit, and there is no indication that appellant was a fingerprinting expert. Third, he indicated on the report that no follow-up investigation would be required. Such a recommendation can only be made by a supervisor; there is no signature from any supervisor anywhere on the report. Fourth, the time stamp on the report was on the front, when it is usually on the back, and it indicated the report was filed in the middle of a shift, when such reports are usually filed at the end or the beginning of a shift. Finally, a check of Sletner's bank account revealed that she received a check from her insurance company for $1675, and on the same day she wrote a check to appellant for $600.

Appellant's testimony provided an explanation for each of these irregularities. He stated that he went to Sletner's house after work one night in 1981, and she told him that she had been burglarized. He therefore took down all the information she gave him about the items that were stolen and filed the burglary report for her. He stated that he wrote "dispatched to" out of habit. He testified that he had put together his own fingerprinting kit by picking up the supplies for it at the stationhouse. He testified that he had no idea why no supervisor had signed the report, but that once he turns a report in "it is totally out of my hands" and that it is no longer his responsibility to insure that his superior officers follow through with their responsibilities. He testified similarly with regard to the timing and placement of the filing stamp. He also testified that Sletner's best friend was also her insurance agent, implying that the two of them had concocted the false burglary scheme and had used him in it. Finally, he testified that she paid him the

$600 because she owed him quite a lot of money. He offered a check issued by him to Sletner for $100 as evidence that he lent her money.

The Commission, as the trier of fact, is empowered to weigh the conflicting testimony. *In re Setchell,* 261 N.W.2d at 355. Its findings reject appellant's justifications for his conduct. The Commission also had the benefit of other credible evidence that supports its conclusions. Primary among this evidence was a transcript from a criminal trial in which Sletner pleaded guilty to one count of theft by swindle in connection with the 1981 burglary claim. She testified at that trial that appellant had assisted her in making the claim and had received $600 from her in compensation for his help.

Although Sletner had promised to testify at appellant's civil service hearing, she failed to appear. Davies, however, did testify. She explained that the reason the women contacted the police department in the first place was that they wanted to hurt appellant after Sletner discovered that he had been dating Sletner and Davies at the same time. Davies testified that she was so upset when she found that appellant was dating Sletner that she agreed to go along with Sletner's allegations against him, even though she did not have personal knowledge about the falsified burglary. She testified that appellant explained to her that Sletner had told him she had been burglarized and that he filed the burglary report for her.

Under the rules of the Civil Service Commission, the rules of procedure and evidence are not applicable at Commission hearings. Thus, the Commission heard numerous hearsay statements and other testimony that might have been excluded at a hearing in a court of law. Even without such evidence, however, the Commission's findings are substantially supported, particularly by documentary evidence of the burglary report itself, the timing and circumstances of the payment of $600 from Sletner to appellant, and the transcript from Sletner's criminal trial.

## DECISION

The Civil Service Commission's findings are supported by substantial evidence. The trial court properly upheld the Commission's order.

Affirmed.