**Edward J. KUNZE, Appellant,**

v.

**WHITE BEAR LAKE POLICE CIVIL SERVICE COMMISSION, Respondent.**

**No. 81–819.**

Supreme Court of Minnesota.

May 14, 1982.

Singer & Singer, Minneapolis, for appellant.

Peterson, Bell & Converse and Roger A. Jensen, St. Paul, for respondent.

KELLEY, Justice.

Appellant, Edward J. Kunze, 'appeals from an order of the Ramsey County District Court which quashed appellant's writ of certiorari, dismissed an appeal from and affirmed a decision of the White Bear Lake Police Civil Service Commission. That commission had terminated appellant's employment as a police officer. We reverse.

Appellant was employed as a police officer for the City of White Bear Lake for more than 12 years. In October 1978, appellant sustained personal injuries to his head and shoulder in a nonwork-related motorcycle accident. After his request for an unpaid medical leave of absence had been denied, appellant was ordered to report for work on November 9, 1978. Concurrently, appellant received instructions from the city to report for a physical examination by the city's health officer, Dr. Schossow, on November 9, 1978. Following tests conducted by the health officer, the latter wrote the city on November 20, 1978 that appellant "is suffering from uncontrolled hypertension plus metabolic abnormalities caused by hypertension * * *. He is not, at the time of this evaluation in good enough health to return to active duty as a police officer [sic]." Subsequently, appellant was notified by the police chief that he was terminated effective November 10, 1978, "the date on which [he was] unable to report physically fit to perform the duties of a police officer."

In July 1979, appellant and his union petitioned the district court for a writ of mandamus to compel the city to hold a hearing concerning his termination.[1] On December 19, 1979, appellant and his attorney entered into a stipulation with the city manager of the City of White Bear Lake and the city's attorney providing for a hearing before the White Bear Lake Police Civil Service Commission.[2] The stipulation provided that the hearing was going to be "in lieu of any other procedure."

A hearing was held on February 28, 1980, after which, on March 1, 1980, the White Bear Lake Police Civil Service Commission found "that the actions of the City of White Bear Lake in terminating the services of Edward J. Kunze as a patrolman for the City of White Bear Lake, were proper and with good cause." Appellant failed to perfect an appeal within 10 days as provided in Minn.Stat. § 419.12 (1980); but he did petition the Ramsey County District Court for a writ of certiorari on April 29, 1980. Following the granting of the writ, respondent moved to dismiss on the ground section 419.12 provided appellant's exclusive appeal remedy, and that since the appeal was not perfected within the 10-day period, the appeal should be dismissed. The Ramsey County District Court denied the motion to dismiss because respondent Commission had not followed the procedural requisites of Minn.Stat. § 419.01 et seq., and therefore was not vested with power and authority to act. Moreover, pursuant to that statute,[3] the district court concluded that the stipulation failed to provide appellant with procedural due process rights to which he was entitled under section 419.01 et seq.; that the stipulation, by its terms, did not constitute a waiver of appellant's rights to a judicial review of the decision of the White Bear Lake Police Civil Service Commission; and that the stipulation acted only to select the Commission to act as the factfinder to whom the dispute was to be submitted.[4]

---

1. This petition made it clear that appellant and his union were claiming rights under Minn.Stat. § 419.01 et seq. (1980) as well as other relief.

2. This stipulation did not specifically refer to section 419.01 et seq. but did refer to the pending petition for writ of mandamus.

3. Minn.Stat. § 419.07 (1980) provides that no peace officer shall be removed or discharged except for cause on written charges "and after an opportunity to be heard in his own defense."

Minn.Stat. § 419.11 (1980) provides that the officer, prior to the hearing, shall be given notice of the hearing containing written charges. Appellant had not been provided with "written charges," and he was terminated before he had an opportunity to be heard in his own defense.

4. Respondent sought to appeal that order to this court. This court held that order to be non-appealable. Respondent then requested the district court to reconsider its prior deci-

Another judge of the Ramsey County District Court heard the case on the merits. He upheld the act of the Commission in affirming the police chief's termination, quashed the writ of certiorari and dismissed the appeal.

Two issues are raised by this appeal. First, is appellant's sole appeal remedy governed by section 419.12? Secondly, if not, was there sufficient evidence to sustain the Commission's finding that the city's termination of appellant's employment as a police officer was "with good cause"?

■■■■ 1. When a statutory right of appeal is afforded, normally that is the exclusive way of review. *Neumann v. Edwards,* 146 Minn. 179, 178 N.W. 589 (1920); *First Trust and Savings Bank v. U. S. Fidelity and Guarantee Co.,* 161 Minn. 88, 200 N.W. 848 (1924); *Aastad v. Board of County Commissioners,* 260 Minn. 357, 110 N.W.2d 19 (1961). Therefore, if the hearing before the White Bear Lake Police Civil Service Commission in February of 1980 was a proceeding pursuant to section 419.01 *et seq.*, it is clear appellant is not entitled to proceed by writ of certiorari on appeal since his appeal was not timely. In our view, the trial court was correct in holding that the hearing before the White Bear Lake Police Civil Service Commission was not a section 419.01 *et seq.* procedure. There was nothing in the stipulation indicating that it was to be a section 419.01 *et seq.* hearing. Indeed, the stipulation specifically provided that the stipulated hearing was to be "in lieu of any other procedure." As pointed out by the trial court, the appellant, in stipulating to the hearing, gave up statutory due process rights provided him by section 419.01 *et seq.*

2. We further conclude there was absence of substantial evidence to support the decision of the White Bear Lake Police Civil Service Commission in sustaining appellant's termination. It is first claimed by the respondent that appellant, on November 9, 1978, was unfit for duty as a police officer. On November 9, 1978, when appellant was examined by the city's health officer, it was found that he had "uncontrolled hypertension plus metabolic abnormalities." [5] Dr. Schossow advised appellant to consult his personal physician to obtain medication to lower his blood pressure. When appellant returned to Dr. Schossow a week later, after taking medication, his blood pressure was reduced. Within a month after Dr. Schossow's initial examination, appellant's blood pressure had returned to within normal readings for a person of his age.

Dr. Schossow's testimony supports the Commission's conclusion that at the time of his examination on November 9, 1978, appellant was then unfit for duty. However, uncontradicted medical testimony, including that from Dr. Schossow, established that hypertension, such as appellant had on November 9, 1978, was controllable with medication. The medical testimony further established, without contradiction, that a person properly treated need not be precluded from stressful occupations such as that of a police officer.

■■■ In order to determine whether appellant was unfit for duty, it must first be decided whether section 419.12 applies to this case. If it does, appellant could only be discharged if "found guilty of inefficiency, breach of duty or misconduct." Minn.Stat.

sion, but the district court again denied the request to dismiss.

5. Substantial doubt was cast upon this conclusion by appellant's attending physician and, more importantly, by the physician who regularly determines the physical qualifications of police officers for the City of Minneapolis. For example, all medical witnesses, including the city's health officer, testified that blood pressure tests must be administered under circumstances that reduce or eliminate "situational stress." Appellant contended that due to past

relationships between himself and Dr. Schossow, "situational stress" was present at his examination on November 9 and on subsequent occasions. Dr. Schossow agreed that "situational stress" could affect the validity of the test. Whether or not "situational stress" played a part in Dr. Schossow's conclusion that appellant, on November 9, was unfit for duty as a police officer, all the medical testimony is in agreement that hypertension is controllable by medication.

§ 419.12 (1980).[6] The procedural aspects of section 419.01 *et seq.* are not applicable to this proceeding as a result of the stipulation entered into between the parties. However, in the absence of other standards to measure "just cause," the provisions of section 419.12 provide the only possible guide for a definition of that term.[7] It is clear that there is no evidence that appellant in any way was guilty of breach of any duty or of any misconduct. *Blom v. Madsen's Enterprises, Inc.*, 298 Minn. 573, 215 N.W.2d 791 (1974). Therefore, the inquiry must be limited to determining whether the appellant was "guilty of inefficiency." Inefficiency has not been defined in the statute. It is difficult for us to see how a police officer can be "guilty of inefficiency" just because he has a temporary physical disability. If the statute provided for dismissal for "incompetency," a physical disability might constitute "just cause" for such dismissal. Inefficiency, on the other hand, usually consists of habitual neglect of duty, incapacity to follow orders or a variety of things. It embraces a course of conduct, a lack of integrity or a limitation of capacity. *State ex rel. Hart v. Common Council*, 53 Minn. 238, 55 N.W. 118 (1893); *Hughes v. Department of Public Safety*, 200 Minn. 16, 273 N.W. 618 (1937). The attorney general has ruled that a police officer was not guilty of inefficiency just because he developed an ailment making it dangerous for him to perform his duties as a police officer; and, unless the Police Civil Service Commission has adopted a rule applicable to such situation,[8] there would be no grounds for discharge for "just cause." Op.Minn.Atty. Gen. No. 415h9 (May 28, 1948).[9] In our view, there was no evidence to establish that appellant was guilty of inefficiency, and accordingly, there was no evidence to establish that he was discharged for just cause.

Reversed.

---

6. Minn.Stat. § 419.12 (1980), insofar as applicable, provides that "[i]f, after investigation and trial by civil service commission * * * an employee is *found guilty* of inefficiency, breach of duty or misconduct, he may be removed * * *." (emphasis added)

7. The trial court so concluded and arrived at its decision based upon the provisions of section 419.12.

8. The Commission is authorized to adopt such rules under Minn.Stat. § 419.06 (1980). There is no evidence in the record that the City of White Bear Lake Police Civil Service Commission had adopted any rule which provided for suspension or discharge of a police officer who is physically unfit to the extent of being dangerous to himself, to fellow officers or to the public.

9. Minn.Stat. § 43.24 (1980), which governs state civil service, is not applicable to this case. It is noted, however, that it provides in subdivision 1a that " '[j]ust cause' excludes the * * * disability * * * of the employee * * *."