Richard THOMPSON, Relator,

v.

CITY OF APPLETON, Respondent.

No. C8–84–1843.

Court of Appeals of Minnesota.

April 16, 1985.

Blair Younger, Schmidt, Thompson, Thompson, & Johnson, P.A., Olivia, for relator.

Brian Wojtalewicz, Wojtalewicz Law Office, Appleton City Atty., Appleton, for respondent.

Considered and decided by POPOVICH, C.J., and LANSING and HUSPENI, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

Appellant Richard Thompson appeals from the findings of fact, conclusions and resolution of the Appleton City Council terminating his employment as a police officer for the City of Appleton. We affirm.

## FACTS

At a regular meeting of the Appleton City Council on August 29, 1984, two Appleton residents complained about misconduct by police officer Richard Thompson. After a full evidentiary hearing, the council adopted a resolution to terminate Thompson's employment. At that time Thompson had been a police officer in Appleton for about nine years. For the final several months, he had been the de facto assistant chief of police.

One of the residents who complained about Thompson's conduct was Bea Telford. Telford was employed as a bookkeeper at a restaurant and as an ambulance attendant for the ambulance service owned by Thompson's father. She had known Thompson for about three years. Telford testified that she and Thompson had a relationship involving sexual contact. She further testified, and Thompson admitted, that after Telford insisted on ending the sexual part of their relationship in February 1984, Thompson visited her home and threatened to commit suicide. In telephone conversations he threatened to "take her with him" and also threatened to rape her to make their relationship "worthwhile." She said Thompson pressured her to continue their relationship in exchange for keeping her job at the ambulance service.

The other allegations of misconduct came from Jeff Wilkening, a part-time police officer who had been a close friend of Thompson's. Wilkening was also a driver for the ambulance service owned by Thompson's father.

Wilkening testified that on August 3, 1984, he and Thompson were on duty together. They were discussing Thompson's relationship with Telford, and Wilkening suggested that Thompson seek psychological counseling. Thompson became extremely angry, stopped the squad car in a residential area, and ordered Wilkening out of the car three times. Wilkening refused

to leave. Thompson got out of the squad car. He took off his gun belt and threw it into the back seat. Wilkening claimed that Thompson challenged him to a fight. Thompson walked away, regained his composure, and resumed his shift.

Two weeks later, Thompson and Wilkening were again on duty together. Thompson criticized Wilkening for overzealously enforcing traffic laws and "making the [regular police officers] look bad." At some point in the discussion, Thompson turned off the ignition, and Wilkening was forced to coast the car to a stop. Wilkening again brought up Thompson's need for help in dealing with his problems, and Thompson responded by grabbing Wilkening by the shirt and pushing his palms against Wilkening's neck. Wilkening testified that he was frightened and reached for the radio to call for help. Thompson turned the radio off to prevent Wilkening from reaching the dispatcher. While the radio was off, police protection was essentially shut down because theirs was the only squad on duty that night. Wilkening asked, "Why do you have to get so physical every time you get angry?" Thompson pushed him to the other side of the car, got out, and walked home.

Wilkening also testified that in June 1983, after some local controversy over Thompson's alleged brutal handling of an arrest, Thompson said he was going to overlook traffic violations in order to avoid any further controversy and damage to his reputation.

After Thompson learned of the complaints by Telford and Wilkening, he threatened them both with loss of their ambulance service jobs and, in the case of Wilkening, also with loss of his police job and another hospital job. In addition, he threatened them with physical violence if they pressed their complaints. On August 29, the day they filed their complaints with the City Council, both Telford and Wilkening were suspended from their jobs with the ambulance service.

The Appleton City Council issued detailed findings of fact based on this evidence. The council concluded that these instances of misconduct were sufficient to justify Thompson's termination because they demonstrated his "lack of self control, a propensity toward unwarranted violent conduct, and abuse of authority and position."

## ISSUES

1. Did the Appleton City Council apply the proper legal standard in its deliberations and decision on the alleged misconduct?

2. Was the City Council's decision to terminate Richard Thompson supported by substantial evidence?

3. Was the City Council's decision to terminate Thompson arbitrary and capricious?

## ANALYSIS

### I

■ A police officer for a Minnesota municipality cannot be discharged from duty unless "found guilty of inefficiency, breach of duty, or misconduct." Minn.Stat. § 419.12 (1984). This standard is the same as that established for municipal civil service employees under Minn.Stat. § 44.08 (1984), which provides that a permanent employee shall not be dismissed "except for just cause." *See Kunze v. White Bear Lake Police Civil Service Commission,* 319 N.W.2d 61, 63–64 (Minn.1982); *Leininger v. City of Bloomington,* 299 N.W.2d 723, 726 (Minn.1980).

In *Leininger v. City of Bloomington* the Minnesota Supreme Court discussed sufficient cause for termination:

" 'Cause,' or 'sufficient cause,' means 'legal cause,' and not any cause which the council may think sufficient. The cause must be one which specially relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public. The cause must be one touching the qualifications of the officer or his perform-

ance of its duties, showing that he is not a fit or proper person to hold the office. An attempt to remove an officer for any cause not affecting his competency or fitness would be an excess of power, and equivalent to an arbitrary removal. In the absence of any statutory specification the sufficiency of the cause should be determined with reference to the character of the office, and the qualifications necessary to fill it."

\* \* \* \* \* \*

"Under this definition it appears that the cause or reason for dismissal must relate to the manner in which the employee performs his duties, and the evidence showing the existence of reasons for dismissal must be substantial."

299 N.W.2d at 726 (quoting respectively *State ex rel. Hart v. Common Council,* 53 Minn. 238, 244, 55 N.W. 118, 120 (1893); *Hagen v. State Civil Service Board,* 282 Minn. 296, 299, 164 N.W.2d 629, 632 (1969)).

■ Thompson argues that the council used an incorrect legal standard in deciding to dismiss him because it merely examined whether his conduct violated police department regulations.

Although the council notes various violations of police department regulations, paragraph six of the council's conclusions shows its awareness that violations are not per se misconduct or just cause for termination:

> Even if all of these instances of misconduct were not violations of the [regulations], they are inexcusable actions on the part of a police officer. Taken together they are sufficient to justify termination of Officer Thompson from his appointment as a police officer. Among other things, they demonstrate lack of self control, a propensity toward unwarranted violent conduct, and abuse of authority and position. Richard Thompson's unfitness to be a police officer in the City of Appleton has been clearly established.

(Emphasis added).

■ Thompson also argues that some incidents on which misconduct charges were based occurred while he was off duty and therefore should not serve as a basis for discharge. This argument has no merit. Off-duty actions may reflect on a police officer's suitability for the job. Thompson's self-described "loss of control" was a common thread in the incidents and was an appropriate factor to consider.

## II

■ Thompson admits substantially all of the facts on which his dismissal was based but contends on appeal that the facts are insufficient to support the dismissal.

A high standard of conduct is expected of police officers. *See Turck v. St. Cloud Civil Service Board,* 268 N.W.2d 899, 902 (Minn.1978). Although individually Thompson's statements and actions might not support dismissal, collectively the statements, threats, assaults, and Thompson's frequent loss of control provide substantial evidence of his unsuitability to serve as a police officer.

## III

■ Thompson also claims that the council's decision was arbitrary and capricious. The decision, however, was based on five hours of testimony, providing sufficient evidence to support the council's decision, and reached after considerable deliberation. In addition, Thompson does not argue that the proceeding was procedurally defective. We therefore find no basis for Thompson's claim that the council acted arbitrarily.

■ We did not consider evidence submitted on appeal regarding disciplinary proceedings against Wilkening because this evidence is outside the record.

## DECISION

The Appleton City Council's dismissal of Thompson for misconduct was based on sufficient evidence. The decision is affirmed.

Affirmed.