CITY OF MINNEAPOLIS, Respondent,

v.

Michael R. MOE, Relator.

No. C8–89–1179.

Court of Appeals of Minnesota.

Jan. 16, 1990.

Robert J. Alfton, Minneapolis City Atty., Steven R. Fredrickson, Asst. City Atty., Minneapolis, for respondent,

Gregg M. Corwin, Christina L. Clark, Gregg M. Corwin and Associates, St. Louis Park, for ·relator.

Heard, considered and decided by FOLEY, P.J., and KALITOWSKI and STONE *, JJ.

## OPINION

FOLEY, Judge.

Following a hearing by an administrative law judge, the Minneapolis Civil Service Commission affirmed the Minneapolis Police Department's decision to discharge relator Michael R. Moe, who had admitted charges of felonious possession of cocaine. We affirm.

## FACTS

Moe began working as a police officer for the Minneapolis Police Department in June 1985. There is no dispute that Moe was an exemplary officer. He served on the north side precinct's "power shift," the "emergency response unit," and the "high risk warrant entry team" during his tenure with the Minneapolis Police Department. The purpose of the "high risk warrant entry team" is to assist other Minneapolis investigative agencies in executing high-risk warrants; most of the warrants executed were narcotics related.

At the time he was hired, Moe received a copy of the Minneapolis Police Department Manual. He also received updates and supplements to the manual at the time they were made.

On the evening of May 19, 1988, Minneapolis police officers arrested Moe in his home and found him in possession of cocaine with a net weight of .05 grams. Moe was prosecuted for felony possession of cocaine, a Schedule II narcotic controlled substance. Moe admitted that he had obtained the cocaine about a week prior to his arrest, and had used cocaine for approximately one year. He entered a guilty plea on the charges against him and was placed on probation for three years.

While in custody prior to entering his plea, Moe was interviewed by Robert Anderson, a counselor with the Minneapolis Police Department. Officer Anderson had received training at ·Hazelden, and his responsibilities with the police department included counseling for chemical dependency. Although Anderson assessed Moe as chemically dependent, he did not notice any physical symptoms of chemical dependency. No medical personnel diagnosed Moe as chemically dependent on cocaine.

Upon his release from custody, Moe immediately entered a two-week inpatient program at the Metropolitan Medical Center for chemical dependency. Moe asked for and received permission to stay a third week, and he thereafter began attending after-care sessions involving attendance at Alcoholics Anonymous. Moe diagnosed himself as chemically dependent with primary addiction to alcohol.

On September 8, 1988, the Minneapolis Police Department advised Moe that disciplinary charges had been brought against him. A pretermination hearing was conducted, and a formal recommendation for discharge was prepared, determining that Moe's felonious possession of cocaine violated several Minneapolis Police Department Regulations and Minneapolis Civil Service Commission Rules.

Moe requested and received a hearing by an administrative law judge. Minneapolis Chief of Police Anthony Bouza testified that he had approved the recommendation for Moe's discharge. Bouza stated that he had not recommended any sanction other than dismissal for any officer found to have used or possessed cocaine. Bouza testified that proof of chemical dependency would not have affected his recommendation.

In Bouza's view, Moe could no longer adequately function as a police officer. Bouza believed Moe's integrity was compromised and his credibility as a witness was affected. Bouza testified:

I think that his effectiveness as a police officer would be totally vitiated in terms of the trust of his colleagues, the confi-

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

dence of the system, and the fact that his own behavior has called his integrity into question.

Following the hearing the ALJ issued a recommendation that the decision to discharge Moe be affirmed.

The Civil Service Commission conducted a review hearing. Two months later, while the Commission was still deliberating, the criminal court issued an order for expungement of Moe's arrest records. The Commission subsequently issued an order adopting the ALJ's findings and·recommendation. The Commission stated:

> The question for us is whether a "no exceptions" policy is either arbitrary and capricious, or unreasonable under the circumstances * * *

The Commission determined that Moe's chemical dependency treatment after the fact was not a sufficient reason to deviate from the police department's established policy.

In issuing its decision, the Commission consolidated Moe's case with that of another police officer, Lennell A. Johnson. The Commission explained:

> We have chosen to decide them jointly because they share a common policy question: Whether a Minneapolis Police Officer may be discharged from his or her employment solely because of the use of a Class II narcotic.

Moe petitioned for reconsideration, but the Commission took no action on his petition, and determined its original order was final. Moe obtained a writ of certiorari, seeking review of the Commission's decision.

## ISSUES

1. Did the Minneapolis Police Department have just cause to discharge Moe for felonious possession of cocaine?

2. Did the decision to discharge Moe violate the police department's chemical dependency policy?

3. Did the Commission err by consolidating Moe's case with that of another police officer?

4. Did the Commission err by failing to make adequate findings in support of its decision?

## ANALYSIS

Our standard of review of the Commission's decision was explained in *In re the Proposed Discharge of Larkin,* 415 N.W.2d 79 (Minn.Ct.App.1987):

> Application of the standard of review for administrative agency action is appropriate even though the Administrative Procedure Act does not apply to municipal agencies. An appellate court may reverse the commission's decision if it is unsupported by substantial evidence on the record or if the court finds it is arbitrary and capricious or affected by other errors of law.

*Id.* at 81 (footnote omitted). *See* Minn.Stat. § 14.69 (1988); *See also Thoreson v. Civil Service Commission of St. Paul,* 308 Minn. 357, 361, 242 N.W.2d 603, 605–606 (1976).

1. The Minneapolis Charter provides that a police officer in Moe's position may be discharged only for cause. Minneapolis Charter Ch. 19, § 11 (Supp.1986). Minneapolis Civil Service Rule 11.03 provides examples of misconduct constituting cause for disciplinary action:

> 13. Criminal or dishonest conduct unbecoming to a public employee, whether such conduct was committed while on duty or off duty.
>
> *     *     *     *     *     *
>
> 18. Violation of department rules, policies, procedures or city ordinance.

It is undisputed that Moe's felonious possession of cocaine violated state law and several police department rules.[1]

Minneapolis police regulations do not specifically provide that a felony conviction for possession of a Schedule II narcotic controlled substance will automatically result in a recommendation for discharge.

---

1. The ALJ found that Moe violated the following department rules: 2–301 (Standard of Conduct); 2–302 (Loyalty); 2–305 (Integrity); 4–100 (Code of Conduct); and 4–102 (Professional Conduct).

Moe argues the Commission was arbitrary and capricious by adopting an unwritten "no exceptions" policy that a police officer may be discharged solely because of his possession of a Schedule II narcotic. As the ALJ found, however, all police officers are aware of the Minneapolis Police Department regulations requiring a police officer to obey the laws and remain above reproach. In addition, Minneapolis Civil Service Commission Rule 11.04E provides for discharge for gross misconduct or severe *initial* misconduct.

■ Moe claims the Commission erred by accepting only the evidence supporting the view that his conduct affected his duties as a police officer. Such an evaluation of the fact issues is a matter to be resolved by the commission and not the courts. *Swenson v. Civil Service Commission of City of Minneapolis*, 276 Minn. 532, 535, 151 N.W.2d 254, 257 (1967) (quoting *State ex rel. Jenson v. Civil Service Commission*, 268 Minn. 536, 538–39, 130 N.W.2d 143, 145–46 (1964)).

Both parties cite ´*Matter of Recommended Discharge of Kelvie*, 384 N.W.2d 901 (Minn.Ct.App.1986), where this court affirmed a determination that possession of marijuana and marijuana-related equipment did not constitute good cause to discharge a firefighter. In *Kelvie*, however, the decision to discharge was principally based upon the firefighter's assertion of his Fifth Amendment rights. The *Kelvie* decision is therefore distinguishable on that basis. *Kelvie* is also distinguishable since there was no relationship between the firefighter's possession of marijuana and his job performance. *See id.* at 904.

*Kelvie* is further distinguishable when the charges against the employees are compared; the firefighter in *Kelvie* did not admit to *felony possession* of a Schedule II narcotic, while here, on the other hand, Moe admitted possessing cocaine. By his actions, Moe engaged in *felonious misconduct* striking at the very essence of law enforcement. Although his misconduct was off-duty, such *felonious misconduct* is inconsistent with the public trust. In *Thompson v. City of Appleton*, 366 N.W.2d 326 (Minn.Ct.App.1985) we stated: "Off-duty actions may reflect on a police officer's suitability for the job." *Id.* at 329. The *Thompson* court also noted that a "high standard of conduct is expected of police officers". *Id.*

In *Ekstedt v. Village of New Hope*, 292 Minn. 152, 193 N.W.2d 821 (1972), the court stated:

> The cause must be one which specially relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public. The cause must be one touching the qualifications of the officer or his performance of its duties, showing that he is not a fit or proper person to hold the office. * * * In the absence of any statutory specification the sufficiency of the cause should be determined with reference to the character of the office, and the qualifications necessary to fill it.

*Id.* at 162–63, 193 N.W.2d at 828 (quoting *State ex rel. Hart v. Common Council*, 53 Minn. 238, 244, 55 N.W. 118, 120 (1893)).

Here, Moe engaged in *felonious misconduct*. The image of integrity and trust is essential to the performance of a police officer's duties. There must be public confidence in law enforcement, and to ignore *felonious possession* of cocaine by a police officer could only serve to undermine public confidence in that office.

This is a time in our society when the scourge of cocaine is running rampant in many parts of our country. We cannot be blind to society's concern about the adverse influence of cocaine in our midst.

■ To some, the result to Moe might seem harsh. He is redirecting his life and that is commendable, but his efforts to rehabilitate are irrelevant to the issue of good cause to discharge. The issue here is the integrity of the police department and under our scope of review we must affirm.

■ 2. Moe argues that in discharging him the police department violated Minneapolis Civil Service Commission Rule 11.-03A, which states that except in cases of

gross misconduct, an employee may not be disciplined for behavior resulting from chemical dependency until given an opportunity for chemical dependency treatment. We conclude Moe's conduct constituted gross misconduct within the meaning of this rule. Felonious possession of cocaine, a violation of the law, must be distinguished from possession or use of alcohol, which is not illegal.

■ Our narrow scope of review also requires us to affirm the Commission's finding that at the time of his arrest on May 19, 1988, Moe was not chemically dependent upon cocaine. As the ALJ found, there was no evidence that medical personnel had diagnosed Moe as chemically dependent on cocaine. Although Officer Anderson diagnosed Moe as chemically dependent, he did not observe any physical symptoms of chemical dependency. Moe himself viewed himself as chemically dependent with primary addiction to alcohol, not cocaine.

We also emphasize that at the time Moe first used cocaine, he was not chemically dependent upon it. His actions from that moment in retaining possession of the substance for his own use and failing to turn it over to the police department constituted felonious misconduct justifying his discharge.

Moe also claims the ALJ erred by deciding the issue of chemical dependency because the parties had stipulated that the issue was not one to be tried before the ALJ. The record, however, does not reveal an intent to stipulate that the issue of chemical dependency would not be raised or decided by the ALJ.

■ 3. Moe argues the Commission committed reversible error by consolidating its decision in his case with that of another police officer. We note that the hearings and arguments were not consolidated, but were entirely separate. Only the decisions in the two cases were consolidated.

In *In re Complaint Concerning Kirby* and *In re Complaint Concerning Winton*, 350 N.W.2d 344 (Minn.1984), the court consolidated two cases where the issue in both cases involved the question whether a judge should be suspended without pay pending the consideration of removal proceedings. In *Ekstedt*, the supreme court also jointly considered two cases involving the same legal question: whether police officers' resolutions criticizing the police department constituted "grievances" within the meaning of a statute disallowing the discharge of public employees participating in the submission of grievances.

Here also, the question whether the Minneapolis Police Department could adopt a "no exceptions" discharge rule for possession of Schedule II narcotics was a legal question that could be determined despite the individual circumstances of each case. At the time the Commission consolidated the two decisions, all of the facts relating to each of the police officers had been individually determined.

4. Finally, Moe argues the Commission erred by failing to provide adequate findings in support of its decision. Moe cites *Reserve Mining Co. v. Minnesota Pollution Control Agency*, 364 N.W.2d 411 (Minn.Ct.App.1985), *pet. for rev. dismissed* (Minn. June 10, 1985). In *Reserve*, findings had not been issued by an ALJ, and this court was attempting to review a permit issued by the Minnesota Pollution Control Agency.

Here, on the other hand, a lengthy hearing was conducted and the ALJ issued detailed findings, which the Commission expressly adopted in full, providing for adequate review by this court.

### DECISION

The Commission correctly determined that the police department had good cause to discharge Moe for felonious possession of cocaine.

Affirmed.