**Xavier CALDWELL, Appellant,**

v.

**CITY OF MINNEAPOLIS, Respondent.**

**No. CX–91–2267.**

Court of Appeals of Minnesota.

June 2, 1992.

Review Denied Aug. 4, 1992.

Marshall H. Tanick, Edwin Cheeseboro, Mansfield & Tanick, Minneapolis, for appellant.

Robert J. Alfton, City Atty., Peter W. Ginder, Asst. City Atty., Minneapolis, for respondent.

Considered and decided by KALITOWSKI, P.J., and LANSING and SCHUMACHER, JJ.

## OPINION

LANSING, Judge.

Xavier Caldwell, a military service veteran, appeals the trial court's decision upholding his discharge from employment as a firefighter. We affirm.

## FACTS

On the fire chief's recommendation for discharge, the Minneapolis Civil Service Commission conducted a hearing and concluded that Xavier Caldwell had committed misconduct by using, possessing, and selling cocaine and converting cocaine powder into crack form. The presiding commissioner recommended discharge under civil service commission Rule 11.03 B13 which provides that criminal or dishonest conduct unbecoming to a public employee may be the cause for disciplinary action whether committed on duty or off duty. The commissioner's recommendation included the following facts:

Caldwell, a seventeen-year veteran of the Minneapolis Fire Department, performed his duties in a superior manner and scored consistently high on his performance evaluations, maintaining an overall average of ninety percent. Despite racism within the department, Caldwell, an African–American, got along well with his colleagues, was a very good firefighter, and had no disciplinary actions reflected in his personnel file.

On August 11, 1988, Caldwell sold .2 grams of cocaine to an undercover police officer participating in a Minneapolis Police Department "sting" operation targeting Minneapolis police officers and firefighters. The same undercover officer observed Caldwell snort cocaine through a straw on August 25, 1988, and on September 23, 1988, smoke cocaine in a glass pipe, offer to trade one-half gram of cocaine powder for crack cocaine, smoke the crack cocaine, and convert cocaine powder into crack cocaine by using a pot of water, baking soda, and a glass test tube.

In February 1989, Caldwell was arrested and charged with unlawful sale of a controlled substance. In September 1989, Caldwell pleaded guilty to and was convicted of unlawful possession of a Schedule II narcotic. The court stayed Caldwell's sentence under Minn.Stat. § 609.35 (1988), placed him on probation for one year, and ordered him to complete 500 hours of community service and submit to random urinalysis. Caldwell successfully completed the probationary period and his conviction was expunged on June 4, 1991.

The facts also included a finding that sometime before September 1989, Caldwell developed an alcohol abuse problem. Caldwell confined his drinking to off duty, was never under the influence of alcohol at work, never let his drinking problem impair his work, received chemical dependency treatment in September and October 1989, and since that time has been chemically free.

On these facts, the civil service commission accepted the presiding commissioner's recommendation that Caldwell be discharged. The Hennepin County trial court upheld the discharge and Caldwell appeals.

## ISSUES

1. Is there substantial evidence in the record to support a conclusion that the discharge was for misconduct related to employment?

2. Did the expiration of the presiding commissioner's term invalidate the veterans preference hearing?

## ANALYSIS

### I

As an honorably discharged military service veteran, Caldwell is entitled to the protections of the Veterans Preference Act, Minn.Stat. § 197.46 (1988). The statute provides that an honorably discharged veteran may only be removed from public employment for incompetency or misconduct. *Id.* Minnesota courts have equated the standard under Minn.Stat. § 197.46 with the standard of just cause required for the discharge of a civil service employee. *Leininger v. City of Bloomington*, 299 N.W.2d 723, 726 (Minn.1980).

The earliest cases defining just cause have required that "[t]he cause must be one which specially relates to and affects the administration of the office." *State ex rel. Hart v. Common Council of Duluth*, 53 Minn. 238, 244, 55 N.W. 118, 120 (1893). Subsequent cases have emphasized that the "cause or reason for dismissal must relate to the manner in which the employee per-

forms his duties." *Hagen v. State Civil Serv. Bd.*, 282 Minn. 296, 299, 164 N.W.2d 629, 632 (1969); *Ekstedt v. Village of New Hope*, 292 Minn. 152, 162–63, 193 N.W.2d 821, 827–28 (1972) (misconduct must be based on inadequate performance of duties); *Hughes v. Department of Pub. Safety*, 200 Minn. 16, 22, 273 N.W. 618, 621 (1937) (misconduct denotes an improper discharge of the duties of office); *In re Discharge of Kelvie*, 384 N.W.2d 901, 904 (Minn.App.1986) (discharge requires relationship between alleged misconduct and job performance).

The presiding commissioner found that Caldwell's violation of department rules, policies and procedures required discipline and that discharge was an appropriate remedy because the drug violations were severe initial misconduct. In the memorandum accompanying his recommendation for discharge, the presiding commissioner discussed the commission's "no tolerance" attitude toward drug offenses, referred to the firefighters' new labor agreement that lists drug offenses as a ground for discharge, and cited cases from other states supporting his position that firefighters' duties relate to public safety, and the use, possession, and sale of illegal drugs affect the "administration of the firefighter's office and the rights and interests of the public." [1] The commission accepted the recommendation without making additional findings.

In upholding the commission's decision, the trial court recognized that Minnesota law requires that misconduct be related to the employee's job performance. The trial court, relying on *City of Minneapolis v. Moe*, 450 N.W.2d 367 (Minn.App.1990), ruled that as a matter of law felonious drug use by firefighters negatively affects the image, trust, and integrity of the department, and consequently Caldwell's co-

caine use undermined his ability to function effectively in his job.

In *Moe* we upheld the commission's decision to discharge a police officer who admitted to off-duty charges of felonious possession of cocaine. *Id.* The record and findings in *Moe*, however, are significantly different because substantial portions of the findings of fact and the hearing officer's accompanying memorandum relate to the effect of Moe's actions on his job.[2] The hearing officer concluded that Moe's off-duty use of narcotics affected his employment as a police officer because (a) active use of cocaine would endanger the safety of co-officers on the high-risk warrant entry team and the emergency response unit, (b) execution of narcotics search warrants require secrecy, and breach of that secrecy puts officers at risk, (c) police officers are subject to temptations involving drugs, (d) a drug conviction undermines the testimonial credibility of a police officer, (e) a felony drug offense is inconsistent with the trust essential to narcotics enforcement, and (f) illegal possession of cocaine is too inconsistent with enforcing, upholding, and observing the law, to allow Moe's assignment to the narcotics patrol division.

In contrast to these findings, the presiding commissioner's recommendation and the commission's final determination are deficient in connecting Caldwell's drug use, possession, and sale to his employment. The primary discussion of the effect Caldwell's drug use and conviction had on his job focused on the negative impact it would have on the public's perception of the fire department. Although drug use undeniably affects public perception, a perception is not sufficient to satisfy the law's requirement that the cause for discharge relate to the way the employee performs his duties.

Despite the minimal findings and conclusions on the relationship between Cald-

---

1. The findings specifically state that Caldwell's use of alcohol did not impair his work. The evidence at the hearing established that the department's general policy was to use limited discipline even for on-duty intoxication. This stands in sharp contrast to its policy for off-duty drug use.

2. Although these findings are not specifically set out in the *Moe* opinion, the City of Minneapolis represented the police department and is fully aware of the proceedings in *Moe*. The *Moe* court adverts to those findings at page 370 of the opinion.

well's drug-related activities and his performance as a firefighter, the transcript of the civil service hearing contains substantial testimony on the adverse effects of off-duty use, possession, and sale of cocaine by a firefighter. Although these reasons are not specifically set out in the commission's findings, they can be discerned from and are, to some extent, compelled by the record. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943); *see also Chenery Revisited: Reflections on Reversal and Remand of Administrative Orders*, 1969 Duke L.J. 199, 224. These reasons bear a relationship to a firefighter's employment sufficient to justify discharge for misconduct.

This evidence includes testimony by the fire chief that (a) firefighters are on call twenty-four hours a day, (b) all firefighters are subject to call in the event of a major fire or emergency, and if a firefighter is using drugs off duty, he will either not be able to report or will report in a chemically-influenced condition, (c) the rigors of firefighting and the necessity to respond in emergency situations require unimpaired physical and mental abilities, (d) firefighters are routinely required to testify in court when the fire department initiates charges for safety-code violations, and (e) there is a significant potential for harm to other firefighters and the public when a firefighter uses narcotics. A department captain and other firefighters testified that a firefighter's active use of narcotics, even if off duty, would concern them because of the potential for it to affect the firefighter's physical condition while on duty.

■ An appellate court's scope of review of administration decisions is narrow, and if a commission's decision is supported by substantial evidence on the record and not affected by errors of law, it must be sustained. *State ex rel. Jenson v. Civil Serv. Comm'n*, 268 Minn. 536, 538, 130 N.W.2d 143, 145–46 (1964), *cert. denied*, 380 U.S. 943, 85 S.Ct. 1023, 13 L.Ed.2d 962 (1965). An administrative board has an obligation to state clearly and completely the facts essential to its conclusion. *Bryan v. Community State Bank of*

*Bloomington*, 285 Minn. 226, 232, 172 N.W.2d 771, 775 (1969). Although the findings and conclusions are deficient and make review difficult, a remand would only prolong rather than benefit the process. *Chenery*, 318 U.S. at 87–88, 63 S.Ct. at 459. The evidence in the record sufficiently supports the commission's conclusion that Caldwell's off-duty use, possession, and sale of drugs negatively affected his employment and that Caldwell was discharged for actions related to his job performance.

## II

■ The term of the civil service commissioner who presided at Caldwell's hearing expired without reappointment six months before the hearing. Caldwell argues that the commission, by conducting the hearing after the expiration of the commissioner's term, unlawfully delegated its responsibility to an outside factfinder, violating due process. *See Walters v. Ramsey County*, 410 N.W.2d 343, 345 (Minn. App.1987), *pet. for rev. denied* (Minn. Sept. 30, 1987). The city disagrees.

The parties cite seemingly contradictory provisions of the Minneapolis City Charter to support their position. The city cites chapter 19, section 1 which provides that "[t]he commissioners shall continue in office until their successors are appointed and have duly qualified." When no successor has been appointed, this section allows the presiding commissioner to remain in office. Chapter 19, section 1 relates specifically to civil service commissioners and their appointment by the mayor.

■ Caldwell cites chapter 3, section 4 of the charter which relates to the establishment of the executive committee to

appoint and remove during their terms of office the Police Chief, Fire Chief, City Engineer, Commissioner of Health, City Attorney, City Assessor, City Coordinator, **Civil Service Commissioner** and any officer * * * who * * * is appointed by the Mayor or City Council.

(Emphasis added.) Under this section, if the executive committee has not reappointed a person within six months of the expiration of their term, the office is declared

vacant. As the trial court noted, the record contains no evidence suggesting an implied repeal of chapter 19, section 1 by chapter 3, section 4, and without strong evidence that the two provisions are irreconcilable, implied repeal of a prior enactment by a later enactment is not favored. *See State v. Jonason*, 292 N.W.2d 730, 734 (Minn.1980).

Chapter 19 primarily and specifically relates to the civil service commission and the terms of the commissioners. Chapter 3 primarily relates to the powers of the executive committee. When a general provision in a law is in conflict with a special provision, the special provision prevails. Minn.Stat. § 645.26, subd. 1 (1990). We conclude that the presiding commissioner was properly a member of the commission. Even if the less specific charter provision applied, failure to raise the issue prior to the hearing validates acts performed as a de facto commissioner. *Huff v. Sauer*, 243 Minn. 425, 429, 68 N.W.2d 252, 255 (1955).

## DECISION

The presiding commissioner functioned as a member of the civil service commission. Despite inadequate findings and conclusions, the record as a whole supports a determination that Caldwell was discharged for actions which affected his performance as a firefighter.

Affirmed.

KALITOWSKI, Judge, dissenting.

I respectfully dissent. It is well settled that removing a public employee for a cause which does not affect the employee's "competency or fitness would be an excess of power, and equivalent to an arbitrary removal." *In re Discharge of Kelvie*, 384 N.W.2d 901, 904 (Minn.App.1986) (quoting *State ex rel. Hart v. Common Council*, 53 Minn. 238, 244, 55 N.W. 118, 120 (1893)).

> The cause must be one touching the qualifications of the officer or his performance of its duties, showing that he is not a fit or proper person to hold the office. * * * [T]he sufficiency of the cause should be determined with reference to

the character of the office, and the qualifications necessary to fill it.

*City of Minneapolis v. Moe*, 450 N.W.2d 367, 370 (Minn.App.1990) (quoting *Ekstedt v. Village of New Hope*, 292 Minn. 152, 162-63, 193 N.W.2d 821, 828 (1972)).

Conspicuously absent from both the presiding commissioner's findings and recommendation as well as the commission's final decision is a determination of how Caldwell's drug possession, use and sale affected his competency or fitness as a firefighter. Absent specific findings, I disagree with the trial court's determination that *Moe*, a case involving drug use by a *police officer*, mandates the conclusion that Caldwell's misconduct undermined his ability to function effectively as a *firefighter*.

The commission found that Caldwell, the city's first African–American firefighter, performed his duties in a superior manner for 17 years. Because this is a critical issue which substantially affects Caldwell's livelihood, I believe it is inappropriate to independently search the record to find support for the commission's decision. *See Mayo v. Schiltgen*, 921 F.2d 177, 179 (8th Cir.1990) (inappropriate for reviewing court to search the record to find other grounds to support agency's decision where agency's rationale was inadequate or improper).

The commission's failure to find that Caldwell's actions affected his ability to continue to serve as a firefighter is an error of law. I therefore would reverse the commission and remand this case for further findings and, if necessary, additional proceedings.