BELSOME, J.,
Dissents with Reasons.
| tOfficer Evangelist’s behavior cannot be excused under the guise that he was not provided adequate notice of the nature of the charges lodged against him. In reversing the Commission, the majority narrowly focuses on a single sentence within the charging letter. Specifically, the majority takes issue with the letter’s reference to Appellant’s errant blows to the torso of the 64-year-old Davis while lying defenseless on the ground, but the omission of Appellant’s other acts of brutality, such as punching Mr. Davis in the head area. The majority concludes that this *847 perceived oversight somehow relieves Appellant of any culpability because notice was lacking to prepare an adequate defense. This writer finds that the charging letter nevertheless plainly advised Appellant of “the nature of the misconduct in sufficient detail to enable [him] to adequately prepare his defense.” Montgomery v. Dept. of Streets, 593 So.2d 1352, 1354 (La.App. 4 Cir.1992). I dissent.
The purpose of the charging letter “is to inform an employee of the charges against him in detail, and to limit and restrict the commission hearing to those charges.” Id. (emphasis added). In this case, Appellant was charged with several Moral Conduct violations. Notably, one of the Moral Conduct charges detailed in the letter was 17271 MCS 54:96 Relative to Battery, defined as “the intentional |2use of force or violence upon the person of another.” (emphasis added). Appellant was also charged with a violation of Unauthorized Force, which provides that “[e]mployees shall not use or direct unjustifiable physical abuse, violence, force or intimidation against any person.” (emphasis added). Finally, Appellant was also charged with a Professional Conduct violation, which provides:
Employees shall conduct themselves in a professional manner with the utmost concern for the dignity of the individual with whom they are interacting. Employees shall not unnecessarily inconvenience or demean any individual or otherwise act in a manner which brings discredit to the employee of the Police Department.
The logic in concluding that blows to the head area are somehow not encompassed by any of these charges escapes this writer. Moreover, the language regarding Appellant striking Mr. Davis in the torso was with regard to what was captured on the videotape of the altercation;[1] it was not in the section of the letter detailing the specific charges against him. Review of the charging letter in its entirety plainly evidences that Appellant was put on notice to defend against the charges against him, to wit: Adherence to Law, Battery, Unauthorized Force, and Professionalism.[2]
The case relied upon by the majority, Williams v. Dept. of Property Mgmt., is distinguishable from the facts of the instant case. In Williams, the employee was informed by letter of one instance of alleged payroll fraud which occurred on one day only, at the pretermination hearing, this one incident of payroll fraud was the only matter discussed. Williams v. Dept. of Property Mgmt., 2002-1407, p. 4 (La.App. 4 Cir. 4/16/03), 846 So.2d 102, 105. Subsequent to the pretermination hearing, plaintiff was terminated. Id. According to the termination letter, however, *848 the employee altered her time card on not one, but three separate occasions; additionally, the letter indicated that after the hearing, “the committee ‘reconvened and reviewed additional time cards.’ ” Id. Nothing in the record suggested that the employee was in attendance at the committee’s reconvened meeting regarding the additional time cards. Id.
The most obvious distinction between Williams and the instant case is that no additional charges were made against Appellant subsequent to the charging letter. Unlike the employee in Williams, Appellant was fully apprised of all the charges against him and was provided the opportunity to present a defense for each of those charges.
The majority’s semantics argument is flawed for another reason. Ironically, although the foundation of the majority’s argument turns upon perceived missing language within the charging letter, at the same time, the majority reads language into the Commission’s decision that does not exist. Specifically, the majority submits that the Commission erred in making a factual finding that Appellant was attempting to effect an unlawful arrest of Mr. Davis. Because the Commission found that Mr. Davis was apparently not breaking any law at the time of the incident, the majority concludes, the Commission’s findings thus implied that Appellant attempted to make an unlawful arrest. The majority ostensibly makes this argument because when any force is used upon a private citizen absent a valid arrest, it constitutes a battery. Fisher v. Department of Public Safety, 555 So.2d 626, 630 (La.App. 4th Cir.1989).
This writer finds that such a conclusion is not supported by the record. In fact, as the majority acknowledges, the Appointing Authority at no time accused Appellant of making an unlawful arrest on Mr. Davis. Dr. Wade Schindler, |4accepted as an expert in force continuum, and Kerry Najo-lia, the Director of Training at the Jefferson Parish Sheriffs Training Academy, both were of the opinion that Mr. Davis’ detention was lawful, and that Appellant’s use of force was justified. No witness testified that the arrest was unlawful. Considering the foregoing, this writer cannot agree that the Commission evaluated Appellant’s use of force as if he were effecting an unlawful arrest. While Appellant was entitled to use “reasonable force” in lawfully arresting Mr. Davis, the Commission explicitly found that Evangelist did not use reasonable force, but used “excessive force”. Simply because the Commission determined that Evangelist used excessive force does not mean that the Commission implicitly determined the arrest to be unlawful. Moreover, it is well-settled that excessive force can be found when an officer makes a lawful arrest. See, e.g., Kyle v. City of New Orleans, 353 So.2d 969 (La.1977).
Notably, a review of the Commission’s decision evidences that the Commission evaluated the circumstances surrounding Mr. Davis’ arrest as if it were a lawful arrest. In Kyle v. City of New Orleans, the Louisiana Supreme Court recognized that “[t]he use of force when necessary to make [a lawful] arrest is a legitimate police function.” Kyle, 353 So.2d at 972. Officers may not use excessive force in making a lawful arrest; thus, “[w]hether the force used is reasonable depends upon the totality of the facts and circumstances in each case.” Id. at 973. Thus, “[a] court must evaluate the officers’ actions against those of ordinary, prudent, and reasonable men placed in the same position as the officers and with the same knowledge as the officers.” Id. A finding regarding the degree of force used by an officer is a factual issue, entitled to great weight and subject *849 to the manifestly erroneous/clearly wrong standard of review. See id.
In making a determination regarding whether an officer’s force was excessive, the Louisiana Supreme Court has articulated several factors to be | ¿considered: (1) the character of the arrestee; (2) the risks and dangers faced by the officers; (3) the nature of the offense; (4) the probability of the arrestee’s escape; (5) the existence of alternative methods of arrest; (6) the physical size, strength, and weaponry of the officers as compared to the arrestee; and (7) the exigencies of the moment. Kyle, 353 So.2d at 973. The Commission’s written findings evidence consideration of nearly all of these factors.
The Commission found that as an unarmed, 64-year-old man, “[Mr. Davis] was not a serious threat to the safety of the four officers using force on him and there was no need to beat him up to the point where he needed stitches on his face and was temporarily unconscious.” This correlates with Kyle factors (2) and (6), the risks and dangers faeed by the officers and the physical size, strength, and weaponry of the officers as compared to the arrestee. See Kyle v. City of New Orleans, 353 So.2d 969, 973 (La.1977). The Commission noted that “[w]e do not see on the videotape any indication that handcuffs were being swung around on one hand and used as a weapon by Mr. Davis or that he was attempting to grab the holstered guns of Appellant and Officer Schilling.” This finding corresponds to Kyle factor (4), the probability of Mr. Davis’ escape, and again factor (6). Id. The Commission also found that Mr. Davis’ overreaction to Appellant and Officer Schilling’s intervention was “not to be condoned” but “did not by itself justify Appellant and his partner in forcibly placing Mr. Davis against a wall and thereafter on the pavement and striking him in the head area.” This determination correlates to Kyle factor (3), the nature of the offense and Kyle factor (7), the exigencies of the moment. Id.
Finally, the Commission concluded that “[t]he videotape shows that at the time Appellant struck Mr. Davis four times, two of which were in his head area, while he was lying on the pavement, he was physically restrained by four police officers and there was no necessity to take such violent action [(¡particularly since Mr. Davis offered to voluntarily turn over for the purpose of permitting the handcuffs to be attached,” and that Mr. Davis also “appeared stunned” from being struck in the head area while against the wall, (emphasis added). These determinations can be classified as Kyle factors (1), the character of the arrestee, and again factors (6) and (7). Id. Accordingly, this writer cannot agree that the Commission factually found, either implicitly or explicitly, that Appellant was attempting to make an unlawful arrest.
Turning to the applicable standard of review, this writer finds that the majority erred in considering only evidence and findings regarding Appellant’s blows to Mr. Davis’ torso area, while recognizing that the video plainly evidences Appellant striking Mr. Davis in the head area as well. As previously noted herein, the charges set forth in the charging letter put Appellant on notice of the charges against him, one of which was battery (excessive force), which encompasses the blows to Mr. Davis’ head area as well as his torso. Particularly when reviewing the video evidence of the incident together with the Commission’s findings, this writer cannot say that no rational basis existed to justify the Commission’s decision. It is well-settled that reviewing courts shall not overturn a Civil Service Commission’s factual findings when a rational basis to justify the Commission’s determinations exists. *850 Walters v. Dept. of Police of New Orleans, 454 So.2d 106, 112 (La.1984).[3]
The Civil Service Commission’s description of the events contained in the video recording viewed in connection with its decision is as follows:
Important evidence in this case is a videotape of the incident taken by a pedestrian on Bourbon Street. The videotape has received local and national media attention. Reactions vary widely. A portion of the videotape, agreed to by all counsel, was introduced into evidence. It provides a more accurate account of the incident than the 17simplistic versions testified to by Mr. Davis and Appellant, both of which we take with a grain of salt.
To this observer the videotape shows Mr. Davis receiving several severe blows to the head area by Officer Schilling while Mr. Davis is standing and facing a wall. He does not appear in the videotape to be a threat to the officers as he faces the wall. Appellant swung at Mr. Davis’ neck while he was in this position and “missed” and struck him in his arm with a baton.
Thereafter Mr. Davis is seen on the pavement facing upwards with Appellant crouching beside him. Appellant strikes Mr. Davis at least twice in his head area[4] at a time when Mr. Davis appears immobilized and offering little resistance. Unfortunately, part of the videotape is obscured by a horse which is being moved by its rider (a policeman) in front of the camera. After the handcuffs are attached and the officers cease contact with Mr. Davis, he lies on the pavement barely moving.
While this incident was being filmed an unidentified pedestrian at the scene is heard on the videotape to say — “Did you get that on film — he surrendered and then they hit him on the head and that’s when he turned around and started fighting ...”[5]
In this case, the Civil Service Commission found that the Appointing Authority had good and lawful cause for taking disciplinary action. The Commission reviewed the testimony and evidence presented at the hearing in making its determinations, most notably that of Appellant, who testified that he struck Mr. Davis four times while he was lying on the ground and admitted attempting to strike Mr. Davis in the neck while he was standing against the wall.[6] The Commission also reviewed the *851 testimony of the EMT, Rebecca Calvo, who observed that Mr. Davis had a contusion with laceration[7] to his right eyebrow and a contusion on his entire left eye. Ms. Calvo further testified that Mr. Davis’ face was so swollen with cuts and lacerations that she could not examine his pupils, and |Hthat Mr. Davis advised her that he could not open his eyes because it was too painful.[8]
Sgt. Howard Gay of the Public Integrity Bureau also testified. The Commission reviewed his testimony regarding his investigation of the complaint filed against Appellant and his sustaining of charges against Appellant for violations of adherence to law relative to a battery, lack of professionalism and lack of moral conduct. Sgt. Gay viewed a videotape, which he testified as showing Appellant punching Mr. Davis in the head area and bracing Mr. Davis with his knee while on the ground and surrounded by four police officers. Sgt. Gay further testified that the video evidenced Mr. Davis being taken to the ground, at which time he began to bleed. Sgt. Gay stated that Mr. Davis was allowed to stay on the ground, bleeding, for four minutes and twenty-two seconds, until EMS arrived on the scene. Sgt. Gay testified that “[t]hose particular actions, in my estimation, did not concur with the training received at the Police Department, which indicated to me that they were in violation of department rules.”
The Commission also reviewed testimony from Police Superintendent Warren Riley, who determined that it was necessary to discipline Appellant for violating the proper procedures for applying physical force. Supt. Riley testified that he made his determination after viewing a videotape of the incident, reviewing Sgt. Gay’s investigation report, and participating in an official hearing with Operations Chief Officer Steven Nicholas.
Sgt. Donald Harris, the eight-year NOPD training instructor, also testified regarding the force continuum. The Commission noted the levels of the force continuum, beginning with oral directives and progressing to “soft hands,” which he described as an officer using an open hand to direct the individual where to go. | {)Only if the “soft hands” approach is ineffective is limited physical force appropriate, also termed “hard hands.” According to Sgt. Harris, “hard hands” involves the striking of body parts such as shoulders, arms and legs. Specifically, he testified that continuous strikes to the radial muscle on the arm will cause a person’s hand to relax so that the officer may handcuff the individual. Even in situations where “hard hands” are appropriate, Sgt. Harris testified that it is not appropriate to strike an individual in the head area. Sgt. Harris further testified that, from viewing the videotape, Appellant appeared to have struck Mr. Davis inappropriately about the head with “two head blows.”[9]
*852 Considering the record in its entirety, this writer cannot agree that the Commission’s factual findings warrant reversal. The Commission’s factual findings with regard to employee discipline are entitled to great weight. “[A]s in other civil matters, deference will be given to the factual conclusions of the [Civil Service] Commission.” Bannister v. Dept. of Streets, 95-0404 (La.1/16/96), 666 So.2d 641, 647. An appellate court should thus not reverse or modify such factual findings unless they are clearly wrong or manifestly erroneous. La. Const. art. X, § 12; Walters, 454 So.2d at 112.
With regard to the Commission’s determinations regarding disciplinary action, “[i]n judging the Commission’s exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the [appellate] court should not modify the commission’s order unless it is arbitrary, capricious or characterized by abuse of discretion.” Id. A determination by the Commission is “arbitrary and capricious” |inif there is an absence of a rational basis for the action taken. Bannister, 666 So.2d at 647.
Unlike the majority, this writer does not find that the record demonstrates arbitrary or capricious behavior on the part of the Commission, or that the Commission abused its discretion, as the record plainly evidences a rational basis for its decision. The Commission appropriately found that the Appointing Authority proved by a preponderance of the evidence that Appellant committed a battery, used unauthorized force, and violated the Moral Conduct Code of Professionalism. It is also important to note that without the filmed documentation of this incident, we would be left with what is fundamentally a swearing contest which Mr. Davis could never expect to win. As outlined in my original dissent,[10] the limited amount of video review by this writer was more than sufficient to uphold the Commission’s findings. The facts and evidence in this case cannot be ignored or swept aside. I dissent.

. Notably, the sentence immediately following the reference to Evangelist’s strikes Mr. Davis' the torso reads: “You were also issued Municipal Summons # 896033 for Simple Battery of Mr. Robert Davis.” The subsequent paragraph reads as follows:
To afford you an opportunity to present facts in mitigation or to explain your conduct, a hearing was held before Deputy Superintendent Steven B. Nicholas of the Operations Bureau, on December 21, 2005. At the hearing you offered nothing which would tend to mitigate, justify, or explain your behavior as heretofore outlined.

. Other courts have noted the expectation of professionalism from police officers as holding officers to a higher standard of conduct than ordinary citizens. Thompson v. City of Appleton, 366 N.W.2d 326, 329 (Minn.App.1985)("A high standard of conduct is expected of police officers.”); City of Minneapolis v. Moe, 450 N.W.2d 367, 370 (Minn.App.1990)(“The image of integrity and trust is essential to the performance of a police officer’s duties.”)
As the majority acknowledges, the Truthfulness charge was subsequently dropped.

. Civil Service Rules have been promulgated to protect workers from unwarranted punishment or retribution by their employer. See Marziale v. Department of Police, p. 13, 2006-0459 (La.App. 4 Cir. 11/8/06), 944 So.2d 760, 768. The protection of civil service employees is only against firing (or other discipline) without cause. Gibson v. Dept. of Police, (La.App. 4 Cir. 1/13/10) 30 So.3d 1032 (citing La.Const. art. X, § 12; Cornelius v. Dept. of Police, 2007-1257, p. 8 (La.App. 4 Cir. 3/19/08), 981 So.2d 720, 724).

. Emphasis in original.

. The Commission noted that the pedestrian's statement is hearsay, but that it was in the record without objection, and that had there been an objection, it would likely still be admissible as an “excited utterance” or "present sense impression” pursuant to La. C.E. art. 803(1 )(2). The Commission noted that the statement was given limited weight in its determination.

.The majority's opinion describes Mr. Davis “clutch[ing] the iron grillwork on a storefront to resist being handcuffed.” This writer finds that such a conclusion is not necessarily supported by the record. As the Commission recognized in its opinion, Mr. Davis testified that he did not intend to resist being handcuffed. Moreover, the Commission noted that, although Appellant denied that Mr. Davis offered to turn over in order to be handcuffed, "after a portion of the videotape was replayed at the hearing it became clear from its audio that Mr. Davis did [offer to *851 turn over to be handcuffed] while he was constrained on the pavement.”

. Ms. Calvo testified that a laceration is "more than an abrasion ... .the skin is actually open.”

. The majority states that it is undisputed that it was the FBI agents' actions, and not Appellant’s actions, which caused any of Mr. Davis' bleeding. This writer finds that such a conclusion is not supported by the record.

.The majority quotes extensively from Kerry Najolia’s testimony regarding which areas of the body are appropriate to strike when subduing an arrestee. Upon reviewing Mr. Najo-lia's testimony in conjunction with the videotape, the Commission explicitly found that “[c]ontrary to the assumption made by Mr. Najolia, Appellant and Officer Schilling were not striking 'soft tissue' areas of the lower body.” (emphasis added).

. Evangelist v. Department of Police, 2008-1375 p. 14-18 (La.App. 4 Cir. 9/16/09), 32 So.3d 815, 2009 WL 2960707 (Belsome, J., dissenting).