**STATE of Minnesota, Respondent,**

v.

**Mark Stephen SHIFFLET, Appellant.**

**No. C5–96–526.**

Court of Appeals of Minnesota.

Nov. 26, 1996.

Samuel A. McCloud, Kelly Vince Griffitts, Shakopee, for Appellant.

Hubert H. Humphrey, III, Attorney General, St. Paul, for Respondent.

Michael T. Norton, Acting Minneapolis City Attorney, Karen S. Herland, Asst. City Attorney, Minneapolis, for Respondent.

Considered and decided by AMUNDSON, P.J., and HUSPENI and RANDALL, JJ.

## OPINION

HUSPENI, Judge.

Appellant Mark Shifflet challenges the trial court's ruling to admit Intoxilyzer test results in a criminal DWI proceeding on grounds that the police prevented him from obtaining an independent test in violation of Minn.Stat. § 169.123, subd. 3 (1994). Because we conclude that compliance with Minn.Stat. § 169.123, subd. 3 is required in a criminal proceeding, we reverse.

## FACTS

Appellant was arrested for driving under the influence on October 11, 1995. His Intoxilyzer test results indicated an alcohol concentration level of .13. The arresting officer transferred appellant to the jailer's custody and informed the jailer that appellant intended to obtain an independent test. Later, a person arrived at the jail, at appellant's request, to obtain appellant's urine sample for the independent test. That person was denied access to appellant for three hours and finally was told he would not be permitted to conduct an independent test of appellant's alcohol concentration level.

At appellant's implied consent hearing, the trial court found that the police had denied appellant the opportunity to obtain an independent test. Based on Minn.Stat. § 169.123, subd. 3 (1994), the revocation of his license was rescinded.

In the criminal proceeding, the trial court denied appellant's motion to suppress the Intoxilyzer test results; the parties then stipulated to the facts, adopting the findings of the implied consent court. Those findings included the Intoxilyzer test results indicat-

ing that appellant's alcohol concentration level was .13 and the fact that the jailer prevented appellant from obtaining a second test. The trial court found appellant guilty of driving under the influence and sentenced him.

### ISSUE

Does Minn.Stat. § 169.123, subd. 3 require that appellant have the opportunity to obtain an independent alcohol concentration test in a criminal proceeding?

### ANALYSIS

### I.

Appellant, although prosecuted under the criminal DWI statute, claims the implied consent statute requires the trial court to suppress evidence of his Intoxilyzer test results because the police denied him the opportunity to obtain an independent test. The implied consent statute provides:

> The person tested has the right to have someone of the person's own choosing administer a chemical test or tests in addition to any administered at the direction of a peace officer; * * *. The failure or inability to obtain an additional test or tests by a person shall not preclude the admission in evidence of the test taken at the direction of a peace officer unless the additional test was prevented or denied by the peace officer.

Minn.Stat. § 169.123, subd. 3 (1994).

Appellant argues that Minn.Stat. § 169.123, subd. 3 governs the admissibility of the chemical test in a DWI prosecution as well as in an implied consent hearing. Statutory interpretation presents a question of law, which we review de novo. *State v. Knutson*, 523 N.W.2d 909, 912 (Minn.App. 1994), *review denied* (Minn. Jan. 13, 1995). The object of statutory interpretation is to effectuate the intention of the legislature. *State ex rel. Graham v. Klumpp*, 536 N.W.2d 613, 615 (Minn.1995).

Our effort to discern the intention of the legislature is aided by tracing the history of the implied consent statute. The language quoted above, excluding evidence of chemical testing if the officer has prevented or denied

additional testing, has been part of the statutory framework since its enactment in 1961. *See* Minn.Stat. § 169.123, subd. 3 (1961). At that time, and up until 1978, a driver's license could be revoked in an implied consent proceeding only for refusing testing. Minn.Stat. § 169.123, subd. 4 (1961) (civil revocation only for refusing testing); *cf.* 1978 Minn. Laws ch. 727, sec. 3 (amending subdivision 4 to allow civil revocation if driver consented to testing and test result was .10 or more). In implied consent proceedings before 1978, therefore, no test result was available, and if a test were taken, the result would be irrelevant to any issue properly raised in that proceeding. *See* Minn.Stat. § 169.123, subd. 6 (1961) (scope of implied consent hearing limited to issues concerning the stop and the refusal). Thus, the intent and effect of Minn. Stat. § 169.123, from 1961 at least until the 1978 amendment, must have been to bar evidence of chemical testing from the DWI prosecution if the driver's right to additional testing had been prevented or denied. Chemical tests—initial or additional—could have had no relevance or application in civil license revocation proceedings prior to 1978.

The legislature significantly altered the relationship of DWI and implied consent proceedings in 1978, when it added test failure as a ground for a civil implied consent revocation. Another significant alteration occurred in 1984, when the legislature amended the DWI statute to eliminate compliance with the implied consent statute as a prerequisite to admitting chemical test results in a DWI prosecution.

Case law reinforces a conclusion that the original intent of the implied consent statute was solely to make reliable evidence of intoxication available in the enforcement of the DWI laws. *State, Dep't of Highways v. Schlief*, 289 Minn. 461, 463, 185 N.W.2d 274, 275–76 (1971). In 1978, however, a parallel civil penalty was provided in an implied consent proceeding (Minn.Stat. § 169.123) for a driver who provided chemical test evidence, but failed the test. Then, in 1984, the legislature amended the DWI statute (Minn.Stat. § 169.121) by deleting language requiring that, to be admissible in a DWI prosecution, chemical test evidence must be taken "volun-

tarily or pursuant to section 169.123." 1984 Minn. Laws ch. 622, sec. 7. As this court has noted,

the 1984 amendment allows admission of the test result in the DWI proceeding although police have not complied with all the procedures of the implied consent law.

*State v. Schauer,* 501 N.W.2d 673, 676 (Minn. App.1993).

The state argues that because the 1984 amendment to section 169.121 allows the chemical test to be admitted in a DWI prosecution without compliance with the implied consent statute, a test may also be admitted in a DWI prosecution even if the officer has prevented or denied additional testing. Our review of the two statutes at issue here compels us to disagree.

The 1984 legislature, in amending Minn. Stat. § 169.121, subd. 2 to expand the admissibility of chemical tests in DWI prosecutions, made no reference to the exclusion of evidence under Minn.Stat. § 169.123, subd. 3. Nor is there any indication in the legislative history of the 1984 amendment that the legislature intended to repeal the exclusion in Minn.Stat. § 169.123, subd. 3.

The purpose of the 1984 amendment, and other simultaneous changes to the DWI and implied consent statutes, was to make chemical testing mandatory and thereby increase the successful prosecutions of DWI violations. *See Hearings on S.F. 1336 and H.F. 1400 Before the Judiciary Committees and Criminal Law Subcommittees* (March–April, 1984). The 1984 amendment eliminated many potential DWI defenses that were based on technical noncompliance with the implied consent statute. But once police have, pursuant to implied consent procedures, acquired chemical test evidence of intoxication to use in the DWI prosecution, the purpose of the 1984 amendments is served, without the necessity of weakening the driver's right to obtain an additional chemical test.

◼ The legislature in 1984 could have addressed the exclusionary language in section 169.123, subd. 3; it did not. The courts will not imply a repeal of a statute by a later enactment absent strong evidence that the

two provisions are irreconcilable. *Caldwell v. City of Minneapolis,* 486 N.W.2d 151, 156 (Minn.App.1992), *review denied* (Minn. Aug. 4, 1992). Although the 1984 amendment does govern the admissibility of chemical test evidence in the DWI prosecution, we find no indication that it was intended to exclude other law on the same subject, or remove existing explicit statutory limitations on the admissibility of that evidence.

The 1984 amendment merely eliminated the broad condition that compliance with the implied consent statute precede admission of chemical test evidence in the DWI prosecution. The 1984 amendment thus eliminated language incorporating all the requirements of the implied consent statute into the DWI statute. It did not purport to repeal the very specific exclusionary rule in Minn.Stat. § 169.123, subd. 3 (language which for at least 17 years had *no* applicability except in criminal DWI cases) for special cases of police misconduct in preventing or denying additional testing.

We note again that the original purpose of the implied consent statute was to furnish evidence for the DWI prosecution. *See Prideaux v. Dept. of Pub. Safety,* 310 Minn. 405, 409–10, 247 N.W.2d 385, 388 (1976) (purpose of implied consent law is to coerce driver into consenting to furnish scientific evidence for criminal prosecution). The legislature has now provided many parallel penalties in the implied consent statute that are comparable to the DWI sanctions. But it would be anomalous to hold that a driver has, under Minn. Stat. § 169.123, subd. 3, a greater right to additional testing in an implied consent proceeding than he or she does in a DWI proceeding. Not only would this be contrary to the history of the statute, as discussed above, but it violates the basic premise that the "constitutional right to have access to potentially exculpatory evidence is rooted in the criminal justice system." *Ruffenach v. Commissioner of Pub. Safety,* 528 N.W.2d 254, 256 (Minn.App.1995).

◼ The 1984 amendment to Minn.Stat. § 169.121, subd. 2 does result in a DWI defendant having fewer statutory defenses than that defendant has in an implied consent proceeding. But we decline to extend

this result to cases of police misconduct preventing or denying additional testing. We note that none of the statutory implied consent defenses implicates constitutional questions. *See generally Schmerber v. California,* 384 U.S. 757, 772, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908 (1966) (state can constitutionally compel driver to submit to blood test against his will and use the test result in a criminal prosecution).

■ A criminal defendant, however, does have a constitutional right to access to potentially exculpatory evidence. *See California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984). While that constitutional right is not necessarily implicated here, *see id.* at 489, 104 S.Ct. at 2534 (state policy of not preserving breath samples of suspected drunk drivers does not violate due process),[1] in the absence of any legislative history or principle of statutory construction compelling that result, we are reluctant to delete from DWI proceedings, by statutory interpretation, the exclusionary rule in Minn.Stat. § 169.123, subd. 3.

The state cites an unpublished opinion of this court, which the trial court also relied on, reaching the opposite result. *State v. Gehrke,* No. C8–90–295, 1990 WL 101505 (Minn.App. July 24, 1990).[2] But *Gehrke,* as an unpublished opinion, is not controlling authority. *See* Minn.Stat. § 480A.08, subd. 3(b) (1994) (unpublished decisions are not precedential). Nor does *Gehrke* address either the history of Minn.Stat. § 169.123, subd. 3, or the legislative history of the 1984 amendment to the DWI statute. Thus, *Gehrke* does not stand for the proposition that the 1984 amendment implicitly repeals Minn.Stat. § 169.123, subd. 3, as applied to DWI prosecutions. Yet, a theory of implicit repealer is the only legal theory under which that statute, originally applicable only to

DWI proceedings, could now be held inapplicable to DWI proceedings.

### II.

Appellant also alleges that the criminal DWI statute violates state and federal due process because the statute does not require suppression of the Intoxilyzer test results when police have denied a defendant the opportunity for an independent test. Because we hold that suppression of the test results is required by Minn.Stat. § 169.123, subd. 3, we need not reach the constitutional issue.

### DECISION

■ Appellant's Intoxilyzer test results should not have been admitted into evidence because police violated Minn.Stat. § 169.123, subd. 3 by preventing appellant from obtaining additional testing, and that statute requires suppression of the test results obtained by the police.

**Reversed.**

---

1. Unlike *Trombetta,* where the issue was whether breath samples must be preserved for the defendant's later use in testing, a driver in Minnesota has a right to additional testing, including testing by different means, e.g., blood or urine testing. Minn.Stat. § 169.123, subd. 3. Arguably, a much closer constitutional issue could be presented by a defendant whose Intoxilyzer result was barely over .10 being denied access to independent blood testing. The defendant's constitutional

right could be violated in a case in which independent testing would have been material and favorable to the defense. *See United States v. Valenzuela–Bernal,* 458 U.S. 858, 866–69, 102 S.Ct. 3440, 3446–47, 73 L.Ed.2d 1193 (1982).

2. No further review was sought of this court's *Gehrke* opinion.