WEST CIRCLE PROPERTIES LLC,
Relator (C9–01–156), Appellant
(C5–01–591),

v.

Daniel HALL, County Recorder,
Respondent (C5–01–591),

County of Olmsted, Respondent,

Cascade Township, Respondent
(C9–01–156).

Nos. C9–01–156, C5–01–591.

Court of Appeals of Minnesota.

Oct. 16, 2001.

Christopher J. Dietzen, James M. Susag, Christopher J. Deike, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, MN, (for relator/appellant).

Terry L. Adkins, Rochester City Attorney, Rochester, MN; and George C. Hoff, Paula A. Callies, Special Assistant Rochester City Attorneys, Hoff, Barry & Kuderer, P.A., Eden Prairie, MN, (for respondent City of Rochester).

Robert W. McIntosh, Senior Assistant Olmsted County Attorney, Rochester, MN; and John M. Baker, Mehmet–Konar Steenberg, Kevin G. Ross, Greene Espel, P.L.L.P., Minneapolis, MN, (for respondent County of Olmsted).

Peter B. Tiede, Michelle D. Christensen, Murnane, Conlin, White & Brandt, P.A., St. Paul, MN, (for respondent Cascade Township).

Considered and decided by LANSING, Presiding Judge, HARTEN, Judge, and HANSON, Judge.

## OPINION

HARTEN, Judge

Relator/appellant West Circle Properties (WCP) brought a mandamus action in district court to compel respondent Olmsted County (Olmsted) and respondent Olmsted County Recorder Daniel Hall to record the plat of WCP's property. Before the district court had addressed the matter, Olmsted's board passed a resolution not to record the plat. WCP challenged that resolution by certiorari in this court, naming Olmsted and Cascade Township (Cascade) as respondents. The district court subse-

quently denied WCP's request for a writ of mandamus, entered summary judgment sua sponte against WCP, and permitted respondent City of Rochester (Rochester) to intervene. WCP challenged the summary judgment and moved this court to consolidate that appeal with its certiorari appeal from Olmsted's decision not to record the plat. The motion was granted.

Because the decision not to record a plat is a quasi-judicial administrative decision, we conclude it is appropriate for certiorari review. Because the plat WCP presented for recording was defective as a matter of law in that it had not been presented to Olmsted's board of commissioners for approval, we conclude that there was no duty to record it and that the district court did not abuse its discretion in denying mandamus. Finally, because WCP agreed that whether Olmsted had a duty to record was the single legal issue dispositive of this matter, we conclude that WCP was not prejudiced by lack of notice when the district court ordered summary judgment on that basis.

## FACTS

WCP, a real estate developer, owns and wants to develop a parcel of property adjacent to Rochester in Cascade Township, Olmsted County. In 1999, when WCP began the process, Cascade had no planning or zoning controls. WCP therefore began discussing with Olmsted and Rochester the possibility of annexing the property to Rochester to obtain municipal water and sewer. No agreement was reached.

In May 2000, Cascade adopted a set of interim ordinances, one of which provided that it would adopt and administer the Olmsted zoning ordinances during the next twelve months while Cascade's planning commission completed a study. Olmsted had zoned WCP's property "agricultural urban expansion." WCP applied to Cascade to have the property rezoned as a "special zoning district" and Cascade agreed to rezone it.

Olmsted's "agricultural urban expansion" designation requires property that generates sewage to connect to an authorized public sewage collection system; Cascade's "special zoning district designation" permits independent sewage collection systems. Thus, Olmsted's zoning would require WCP to connect to the Rochester system, while Cascade's zoning would permit it to install an independent system. Because WCP's proposed development did not involve connection to Rochester's public sewage collection system, the development complied with Cascade's zoning designation, but not with Olmsted's.

Cascade approved both the preliminary and the final plat, subject to WCP's obtaining a well water permit from Olmsted's environmental commission. Although the commission staff recommended approval of WCP's application for the permit, a resolution recommending denial was circulated before the commission's meeting, and WCP withdrew its application.

Cascade later passed a resolution by which it took over adoption and enforcement of official controls and amended its ordinance to provide for approval of well water permit applications by the State Department of Health or a Cascade-approved inspector licensed by the state. Cascade also reaffirmed its decision to rezone WCP's property and to approve the final plat, and eliminated the requirement for a well water permit.[1] But when WCP attempted to record the plat, Olmsted's clerk refused. Ultimately, WCP was told that the plat could not be recorded unless the

1. Although Cascade is denominated a respondent, its interests here more closely ally with those of WCP than with those of Olmsted and Rochester.

Olmsted Board of Commissioners approved it.

Olmsted's decision reads:

WHEREAS [WCP] has tendered for recording in the Office of Property, Records and Licensing a plat for a subdivision * * * and

WHEREAS the said plat was tendered without evidence of the approval of [Olmsted] * * *

NOW, THEREFORE, BE IT RESOLVED, that [Olmsted] does direct that the Manager of Property, Records and Licensing not record the said plat of [WCP] for failure of the developer to abide the requirements of the Delegation Agreement for Water Wells from the State Department of Health, Chapters 1031, 394, 145A and 505 of Minnesota Statutes, the County Water Well and Water Supply Ordinance, the County Environmental Services Administrative Ordinance, the County Zoning and Subdivision Ordinances, the County ISTS Ordinance, and County Public Health Regulations # 1 and # 41.

WCP challenged the refusal to record by seeking both a writ of mandamus in the district court and certiorari review of Olmsted's decision in this court, leading to this consolidated appeal.

## ISSUES

1. Is Olmsted's decision not to record within this court's scope of review?

2. Was Olmsted's refusal to record the plat based on legally sufficient reasons?

3. Was WCP prejudiced by the district court's sua sponte summary judgment?

## ANALYSIS

**1. Scope of Review**

■ The threshold issue is whether Olmsted's directive not to record WCP's plat was a quasi-judicial administrative decision reviewable by certiorari. This court has held that "[t]he denial or approval of a preliminary plat application is a quasi-judicial administrative decision * * *." *Hurrle v. County of Sherburne*, 594 N.W.2d 246, 249 (Minn.App.1999). While that holding is not precisely on point (action on preliminary plat application rather than plat recording), the distinction is not significant.

■ Moreover, quasi-judicial acts affect the rights of specific individuals, analogous to the way those individuals would be affected by court proceedings, while legislative acts affect the rights of the public generally. *Interstate Power Co. v. Nobles County Bd. of Comm'rs*, 617 N.W.2d 566, 574 (Minn.2000). Olmsted's decision affects the rights of specific individuals rather than the general public; it is therefore quasi-judicial.

■ Quasi-judicial decisions are also characterized by:

(1) investigation into a disputed claim and weighing of evidentiary facts; (2) application of those facts to a prescribed standard; and (3) a binding decision regarding the disputed claim.

*Minn. Ctr. for Env't Advocacy v. Metro. Council*, 587 N.W.2d 838, 842 (Minn. 1999) (granting or denying conditional use permits is a quasi-judicial decision). Olmsted's decision meets these criteria. It refers to a lack of evidence for county approval of the plat; it states that WCP failed to meet a number of prescribed standards, and it is a binding decision resolving WCP's claim that it is entitled to have its plat recorded. The decision not to record was a quasi-judicial administrative decision, and is therefore appropriate for certiorari review.

## 2. Refusal to Record

The goal of our certiorari review is to determine whether Olmsted's decision not to record the plat was reasonable. *Good Value Homes, Inc. v. City of Eagan,* 410 N.W.2d 345, 348 (Minn.App.1987). This court examines the decision to see if the reasons given for it are legally sufficient. *Id.* Whether Olmsted had legally sufficient reasons for its action depends on the construction of Minn.Stat. §§ 505.03, 462.358, and 394.33 (2000). Statutory construction is a question of law that this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998).

Olmsted directed that the plat not be recorded because it "was tendered without evidence of the approval of the Olmsted County Board of Commissioners." It refused to record the plat pursuant to Minn. Stat. § 505.03, subd. 1 (2000), which provides that:

> The plat shall * * * together with an abstract and certificate of title, be presented for approval to the council of the city or town board of towns wherein there reside over 5,000 people in which the land is located; and, if the land is located outside the limits of any city, or such town, then to the board of county commissioners of the county in which the land is located.

Cascade has a population of 3,277. Therefore, because WCP's land is located outside the limits of a town of over 5,000 people and in Olmsted County, WCP is required by statute to present its plan to Olmsted's board of commissioners.

WCP and Cascade argue that the phrase "wherein there reside over 5,000 people" enacted in 1953, was repealed in 1980 by Minn.Stat. § 462.358, subd. 1a, providing that:

> [A] municipality [defined by Minn.Stat. § 462.352, subd. 2, as "any city * * *

and any town"] may by ordinance adopt subdivision regulations establishing standards, requirements, and procedures for the review and approval or disapproval of subdivisions.

But the legislature has given no indication that Minn.Stat. § 505.03, subd. 1, is repealed; on the contrary, it revised the subdivision in 1992. Therefore, there has been no explicit or implied repeal because "courts will not imply a repeal of a statute by a later enactment absent strong evidence that the two provisions are irreconcilable." *State v. Shifflet,* 556 N.W.2d 224, 227 (Minn.App.1996) (citing *Caldwell v. City of Minneapolis,* 486 N.W.2d 151, 156 (Minn.App.1992), *review denied* (Minn. Aug. 4, 1992)).

We see no evidence that a statute requiring plats of land not located in a city or town of over 5,000 to be approved by the county board before they are recorded is irreconcilable with a statute permitting any city or town to pass ordinances regulating subdivisions. And if we did see evidence that the statutes were irreconcilable, Minn.Stat. § 505.03, subd. 1, would prevail because it governs the recording of plats and is therefore specific to the problem before us. "[I]f two statutory provisions conflict, then the more specific controls the more general." *Hyland Hill North Condo. Ass'n, Inc. v. Hyland Hill Co.,* 549 N.W.2d 617, 622 (Minn.1996) (citing Minn.Stat. § 645.26, subd. 1 (1994)).

Moreover, the legislature has addressed the problem of concurrent county and municipality jurisdiction over zoning by limiting the authority Minn.Stat. § 462.358, subd. 1a, confers on municipalities.

> [A]fter the adoption of official controls for a county or portion thereof by the board of county commissioners no town shall enact or enforce official controls inconsistent with or less restrictive than

the standards prescribed in the official controls adopted by the board.

Minn.Stat. § 394.33 (2000). Therefore, Cascade's authority to approve or disapprove WCP's subdivision plat is limited by its statutory obligation not to enact or enforce controls inconsistent with or less restrictive than Olmsted's.

Both the Minnesota Supreme Court and this court have addressed the concurrent jurisdiction issue. *See Berggren v. Town of Duluth,* 304 N.W.2d 24, 27 (Minn.1981); *Altenburg v. Pleasant Mound Township,* 615 N.W.2d 874, 879 (Minn.App.2000), *review denied* (Minn. Nov. 21, 2000). *Berggren* concerned a conflict between zoning provisions of a town and those of a county.

Section 394.33 indicates the legislative intent to make zoning regulations of towns subject to county regulations in the interests of achieving uniformity within county boundaries. Any town regulations which may be promulgated are effective upon adoption of county controls only insofar as they are not inconsistent with the county regulations. In order to effectuate the intention of the legislature, standards must be consistently applied to the same sites and not used merely as definitions for particular categories. It would defeat the statutory policy that grants the county priority in zoning if a less restrictive town ordinance were allowed to supersede a county ordinance zoning the same area.

*Berggren,* 304 N.W.2d at 27 (citations omitted).

*Altenburg* upheld a township feedlot ordinance that was found to be not inconsistent with and more restrictive than the county ordinance.

[W]e construe the term 'inconsistent' [in this context] to mean circumstances where a township implements standards that are different in nature from county standards. For example, a township could not zone an area as a commercial district when the same area has been zoned as a residential district by the county. *See Berggren v. Town of Duluth,* 304 N.W.2d 24, 26–27 (Minn.1981) (indicating a town's ordinance zoning three areas as light industrial was inconsistent with a county ordinance that zoned the areas as an environmental district, an agricultural district, and a residential district).

*Altenburg,* 615 N.W.2d at 879–80. Even though Cascade adopted Olmsted's ordinances, its application of the standards differed: Olmsted had zoned WCP's property for "agricultural urban expansion" and Cascade zoned it "special zoning district," which would permit commercial and light industrial use not permitted by Olmsted's zoning. Therefore, Cascade's standards were inconsistent with Olmsted's, and Olmsted had legally sufficient reasons for refusing to record WCP's plat.

■ WCP and Cascade argue that the interpretation advanced in *Berggren* and *Altenburg* leads to "complete stagnancy in zoning" and violates the presumption that the legislature did not intend an absurd result. *See* Minn.Stat. § 645.17(1). But this argument overlooks two points. First, a township is not prevented from imposing lawful zoning regulations that are as restrictive or more restrictive than those of the county, or from amending zoning restrictions within those parameters. Second, affected property owners may apply to the county for rezoning. *See* Minn.Stat. § 394.25, subd. 10 ("An amendment to official controls may be initiated by the board, the planning commission, or by petition of affected property owners * * *.").

In any situation involving concurrent jurisdiction, it is essential that priority be established by some means. Here, the

legislature used a chronological approach: if a county has already imposed certain land use restrictions, a township may not override those restrictions. Construing these statutes to enable individual townships to override restrictions previously imposed by the county would, in effect, deprive the county of its power to zone and would produce an absurd result. We conclude that Olmsted had no duty to record the plat as presented.

### 3. Summary Judgment

 The district court may grant summary judgment sua sponte if, under the same circumstances, it would grant summary judgment on a party's motion. *Septran v. Ind. Sch. Dist. No. 271*, 555 N.W.2d 915, 920 (Minn.App.1996) (citation omitted). WCP recognizes that the district court had the authority to grant summary judgment, but contends that it was prejudiced by lack of notice because it had no opportunity to oppose the judgment.

In January 2001, the district court issued an order denying WCP's petitions for a peremptory writ and an alternative writ and its request for a declaratory judgment that Olmsted had acted unlawfully. On March 6, 2001, the court sua sponte issued an order for judgment denying WCP's petitions and request. During that month, WCP raised no challenge to the order.

Moreover, at the hearing, WCP stated that the matter turned on a single legal issue.[2] WCP does not specify now what else it would have argued on this issue, nor did WCP indicate at the hearing that it saw any other issues, lacked notice of the issue being raised, needed more time to develop arguments, or wished to submit a supplemental brief on the issue.

Finally, WCP claims lack of notice because Olmsted filed the brief opposing WCP's motion for a writ of mandamus just two days before the hearing. But WCP replied to that motion with a brief served the night before the hearing and filed the same day as the hearing. We conclude that there was no prejudice to WCP and no basis to overturn the summary judgment.[3]

### DECISION

Certiorari review of the county's refusal to record the plat was appropriate, because the refusal was a quasi-judicial decision. The county's refusal was based on legally sufficient reasons, and the developer was not prejudiced by the sua sponte grant of summary judgment.

**Affirmed.**

---

**2.** Counsel for WCP stated: "[T]here is in this case a pure legal question that I think the Court has to resolve"; "The issue here is whether this plat meets the requirements of the statute and therefore should be recorded"; "[T]he county's not required to approve the plat"; "[T]his issue is dispositive of the case and it is a pure legal issue. The issue is whether the county is required to approve the plat, and we say no."

**3.** In light of our affirming the summary judgment dismissing WCP's claims, the issue of whether the district court abused its discre-

tion in allowing Rochester to intervene becomes moot. We note, however, that Rochester claims it will be damaged if the plat is recorded because WCP will provide independent utilities to property that lies between an area already served by Rochester's municipal utilities and another area that has petitioned Rochester for the extension of municipal utilities. Minn. R. Civ. P. 24.02 provides that anyone whose claim or defense has a common question of law or fact with the main action may intervene. We see no abuse of discretion in Rochester's intervention.